**Ling LI; Mingwei Chen; Mingliang Chen, Petitioners,**

v.

**ATTORNEY GENERAL OF the UNITED STATES; Bureau of Citizenship and Immigration Services, Respondents.**

No. 05–4407.

United States Court of Appeals, Third Circuit.

Argued March 12, 2007.

Filed: April 30, 2007.

Theodore N. Cox (Argued), Law Office of Theodore N. Cox, New York, NY, for Petitioners.

Paul Mansfield (Argued), Office of the United States Attorney, Philadelphia, PA, Richard M. Evans, Paul Fiorino, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondents.

Before: FUENTES, VAN ANTWERPEN, and SILER,* Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Ling Li and her two sons, Mingwei Chen and Mingliang Chen, petition for review of an order denying them asylum, withholding of removal, and relief under the United Nation Convention Against Torture. An immigration judge ("IJ") concluded that Li did not suffer past persecution because she failed to establish that her husband was forcibly sterilized. The IJ also concluded that Li would not likely be tortured if returned to China. The Board of Immigration Appeals ("BIA") affirmed and, for the reasons that follow, we will deny the petition.

### I.

Because we write for the parties, we recount only those facts necessary to the disposition of the case. We recount the

---

* The Honorable Eugene E. Siler, Jr., Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

facts as they were presented by the petitioner in the administrative proceedings.

Ling Li, a native and citizen of China, was born in that country's Fujian Province in 1964. She married Jiping Chen in 1987 and gave birth to a son a year later. Shortly thereafter, two family planning officials alerted Li that she had to undergo a procedure to insert an intrauterine device ("IUD"). If she did not, the officials stated, her son would be unable to attend school. Li and her husband voiced opposition to this policy, but the officials forced her to undergo the procedure anyway.

In spite of the IUD procedure, Li learned she was again pregnant in 1989. Fearing the punishment of state officials, Li concealed her second pregnancy by staying indoors and foregoing hospital visits. In November 1989, she traveled to her husband's aunt's home to give birth to a second son. Officials of the Birth Control Bureau quickly became aware of the child and subsequently confronted Li, demanding that she be taken for sterilization. Because Li was in poor health from the recent birth, she did not comply.

In March 1990, five or six officials came to Li's home and again demanded she undergo sterilization. Realizing that Li was still in poor health, the officials demanded instead that her husband be sterilized. The officials forcibly removed Li's husband from their home by tying his hands and dragging him out the door. His attempts to escape were unsuccessful, and when he returned home, he said: "I'm only 27 but I'm already sterile."

In November 1992, through the help of a friend, Li's husband fled to New York City. Li remained behind with her sons. In 2001, she began hearing rumors that the government would sterilize women whose husbands had already been sterilized. Fearing such treatment, Li paid a smuggler about $60,000 to help her and

her sons get out of China. Upon arrival in the United States, she managed to enter the country without being formally admitted or paroled. Li arrived around August 18, 2001.

Within a year, Li applied for asylum, naming her two sons as derivative applicants. Li was also served with a Notice to Appear, charging her as removable for entering the country without inspection. The matter was referred to an IJ who held a hearing on May 10, 2004. Li conceded removability, but submitted documentation in support of asylum, as well as withholding of removal and protection under the Convention Against Torture ("CAT").

Li testified at the hearing that her husband had previously applied for asylum upon his arrival, but was denied. Although her husband was living nearby in New York City, Li stated that she did not want him to testify for fear he would be arrested. The IJ stated that Li's husband "certainly would have been allowed to testify," and that he was "the only person who can corroborate your claim." (App.98–99.) He asked Li why her husband did not come in to explain what had happened to him. Li responded simply: "I don't want to take the risk." (App.99.)

In an oral decision, the IJ denied Li's application. The IJ first determined that Li had testified credibly. He stated that:

> The respondent today with a few minor discrepancies did testify consistent with her claim. She claims that she had an IUD and that she was effectively given no choice because of the representation by local officials that the child would not be able to attend school without the IUD. She also testified consistent with her claim that her husband was sterilized against his will.

(App.52.) Nevertheless, the IJ explained that "the problem with [Li's] case has less

to do with credibility ... but more to do with whether [she] can possibly meet her burden of proof given the necessary connection between her claim and that of her husband." *Id.* He stated that most of Li's case depended on the forcible sterilization of her husband, and that the evidence presented by Li "previously was insufficient to justify a grant of asylum for the husband," on account of an adverse credibility determination made in the husband's case. *Id.* at 55. He concluded that a finding that Li's husband was forcibly sterilized would be "fundamentally unfair to the Government's position in the husband's case...." *Id.* This was true, the IJ reasoned, given "the absence of the husband's corroborating testimony today." *Id.*

Having rejected forced sterilization as a basis for relief, the IJ then ruled that the forcible insertion of an IUD was insufficient on its own to establish past persecution. Accordingly, he denied asylum and withholding of removal. The IJ also concluded that there was insufficient evidence that Li would be tortured if returned to China, thereby precluding CAT relief. Li appealed these decision to the BIA, which adopted and affirmed the decision of the IJ.

## II.

We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252. When the BIA adopts the decision of an IJ, we review the IJ's decision. *Lavira v. Attorney General,* 478 F.3d 158, 164 (3d Cir.2007). We review factual determinations under the substantial evidence standard, meaning

we may not disturb a finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Chen v. Gonzales,* 434 F.3d 212, 216 (3d Cir.2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).

### A. *Past Persecution*

The parties agree that Li would have been eligible for asylum had she established her husband's forced sterilization in China.[1] Moreover, they seem to agree that Li's credible testimony, without more, would have been sufficient to carry her burden. *See Singh v. Gonzales,* 406 F.3d 191, 195 (3d Cir.2005). What is disputed, however, is the IJ's treatment of her husband's failed asylum claim and her husband's absence from the proceedings. Li contends that the IJ improperly considered himself bound by the adverse outcome in her husband's case, and that he unreasonably required his testimony. We reject these contentions.

First, the IJ did not consider himself bound by the prior decision of the BIA. If he had, he would not have offered Li the chance to corroborate her testimony with that of her husband, nor would he have repeatedly referred to the missing testimony as "corroboration." Accordingly, we do not agree with Li that the IJ "blindly" adhered to the outcome in her husband's case.

■ Second, the IJ did not err in requesting that Li provide this corroborating testimony. An IJ may request corroboration when that request is reasonable. *Obale v. Attorney General,* 453 F.3d 151, 163 (3d Cir.2006).[2] In this case, the IJ's desire to corroborate

---

1. That is, the parties do not dispute that Li could step into her husband's shoes under *In re C–Y–Z,* 21 I. & N. Dec. 915 (1997) and *In re S–L–L,* 24 I. & N. Dec. 1 (2006).

2. Such a request involves: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence." *Id.*

the account of sterilization was reasonably prompted by the adverse determination in Li's husband's case. Li's explanation that she feared his arrest was properly dismissed as insufficient by the IJ, who believed the proceedings were important enough for her husband to testify. Without an adequate justification for a lack of corroborating evidence, the IJ appropriately made an adverse factual finding. *See id.* at 163–64.[3]

### B. *Convention Against Torture*

■ Li also argues that the IJ erroneously determined she was ineligible for relief under the CAT. To make out a CAT claim, Li must demonstrate that it is "more likely than not that ... she would be tortured if removed to [China]." *Lavira,* 478 F.3d at 166 (quoting 8 C.F.R. § 208.16(c)(2)). The IJ independently addressed this claim, recognizing the possibility of administrative detention and abuse if Li were to be removed. The IJ concluded, however, that the evidence did not establish that Li was "likely to be harmed in a manner that would rise to the level of torture" if returned. This conclusion was based, at least in part, on the State Department Report submitted by Li. After reviewing the record as a whole, we conclude that the IJ's decision has the support of substantial evidence.

### III.

The IJ's decisions that Li did not suffer past persecution and would not be subject to torture upon return to China were sup-

ported by substantial evidence. Accordingly, we will deny her petition.

---

**3.** We note that Li also argued to the IJ that the forcible IUD insertion was alone sufficient to establish "past persecution." That argument was abandoned at oral argument, however, so we have no occasion to address it here. We also note that, because Li failed to meet the requirements for asylum eligibility, she cannot make out a claim for withholding of removal, which applies a more stringent standard. *See Mudric v. Attorney General,* 469 F.3d 94, 102 n. 8 (3d Cir.2006).