**LUI GUI ZHENG, Petitioner,**

v.

**ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.**

**No. 07–1155.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) April 2, 2008.

Filed: April 9, 2008.

Joshua E. Bardavid, New York, NY, for
Petitioner.

John D. Williams, Barry J. Pettinato,
Ari Nazarov, Katharine Clark, United
States Department of Justice Office of Im-
migration Litigation, Washington, DC, for
Respondent.

Before: RENDELL, GREENBERG
and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Lui Gui Zheng, a native and citizen of
China, petitions for review of a decision by
the Board of Immigration Appeals ("BIA")
dismissing Zheng's appeal of an immigra-
tion judge's denial of his application for
asylum, withholding of removal, and relief
under the Convention Against Torture.
For the following reasons, we will grant
the petition for review and remand for
further proceedings consistent with this
opinion.

Zheng is a native and citizen of the
People's Republic of China. He entered
the United States on or about November
26, 2004. That same day, Zheng was
placed in removal proceedings and was
charged with removability pursuant to Im-
migration Nationality Act ("INA")
§ 212(a)(6)(A)(i), 8 U.S.C.
§ 1182(a)(6)(A)(i). On February 17, 2005,
Zheng filed an application for asylum,
withholding of removal, and protection un-
der the Convention Against Torture. On

June 14, 2005, a merits hearing was held before Immigration Judge Mirlande Tadal.

According to Zheng's testimony before the Immigration Judge and his asylum application, Zheng left China because he was persecuted by the Chinese government for "[s]preading Falun Gong." Zheng first became involved with Falun Gong in 1999 when he met a friend who began to teach him about the movement. In 2000, this friend gave Zheng some Falun Gong books and handbills to keep at his house. Zheng testified that he read these materials whenever he had time, but did not participate in Falun Gong activities.

Zheng contends that, in March 2004, he overheard his co-workers speaking negatively about Falun Gong and concluded that they had been "brainwashed" by the Chinese government's anti-Falun Gong propaganda. Zheng testified that he decided to attempt to change his co-workers' views. Zheng went home and retrieved the handbills about Falun Gong that his friend had previously given him. Zheng then returned to work and distributed them to his co-workers.

Zheng further testified that, on March 25, 2004, around 9:00 a.m., two village officials went to the construction site where Zheng was working, and accused him of spreading Falun Gong materials and Falun Gong thoughts. Zheng was detained and brought to a local village office. Zheng claims he was interrogated and ordered to confess to spreading Falun Gong. When Zheng refused, he was beaten and his hands were burned. Zheng was not given anything to eat during his detention. When Zheng's family learned he had been detained around 10:00 p.m. that same day, they went to the office where he was held, and paid a bribe to his guard. Zheng escaped out an unlocked back door and headed for the waterside where his family was waiting for him with a boat. Zheng took the boat to another village and hid at his aunt's home. Eventually, Zheng fled to the United States.

In support of his application, Zheng submitted an addendum recounting his experiences, an affidavit from a friend in the United States attesting to his current practice of Falun Gong, a letter from his father, a Chinese residence ID card, a birth certificate, pictures of Zheng practicing Falun Gong in the United States, and background information regarding the Chinese government's suppression of Falun Gong. The 2004 State Department Country Report for China is also a part of the record.

The IJ denied Zheng's application. The IJ found that his testimony "overall was unbelievable and implausible" and that he was "unable to testify credibly as to the alleged events that purportedly took place in March 2004." The IJ concluded that his testimony was inconsistent in that he initially testified he had a conversation with his co-workers on March 25, 2004, and then changed his testimony to state that the conversation took place on March 1, 2004. The IJ found Zheng's testimony inconsistent because he initially stated that he was able to convert his co-workers into believing that Falun Gong was not a cult, and then later stated that he had not convinced his co-workers of this. The IJ explained that Zheng appeared to have limited, if any, knowledge of Falun Gong because he was unable to provide any specific information about what he had read and what involvement he had with the movement.

The IJ further rejected as "extremely unlikely" Zheng's contention that his parents were able to bribe an official and secure his escape from detention. The IJ explained that Zheng's account of his escape had a lot of "holes" in it because, given that Zheng did not know of his par-

ents' arrangements until later, it was unclear how Zheng knew to walk out the open back door, and find a boat waiting for him at the waterside. Accordingly, the IJ concluded that Zheng had not established that he had suffered past persecution or had a well-founded fear of persecution if he returned to China.[1] The IJ recognized, however, that "had [Zheng] provided credible testimony, had he submitted clear evidence that the government did indeed seek to harm him because of his involvement with the Falun Gong, the respondent would have established his eligibility for asylum."

Citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), the BIA adopted and affirmed the Immigration Judge's June 14, 2005, oral decision "insofar as she found that the respondent had not satisfied the burden of proof for the requested relief." The BIA expressed agreement with the Immigration Judge's conclusion that Zheng failed to provide sufficient details to explain certain implausible aspects of his claim, including how he was able to escape from his detention "by walking through an unlocked rear door .. to find, without any prior notice ... his parents waiting to aid his escape." The BIA also found that, in view of Zheng's inability to provide "meaningful details about Falun Gong," it was "implausible" that he was able to successfully convert anyone to Falun Gong. Moreover, although this issue was not analyzed by the Immigration Judge, the BIA went on to hold that the documentary evidence that Zheng submitted was "minimal" and

constituted inadequate "corroborating evidence." The BIA added that Zheng's testimony about the events of March 2004 was "notably lacking in detail." The BIA concluded, therefore, that it was "unable to determine that the Immigration Judge's findings of fact were clearly erroneous."

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a), 8 U.S.C. § 1252(a). Because the BIA appears to have substantially relied on the findings of the IJ, we have jurisdiction to review the decisions of both the BIA and the IJ. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir.2004).

Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998) (quotation omitted). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (quotation omitted). Adverse credibility determinations must be based on "specific, cogent reasons," not on "speculation, conjecture, ... and otherwise unsupported personal opinion," *Dia v. Ashcroft*, 353 F.3d 228, 249–50 (3d Cir. 2003) (en banc), or minor inconsistences that do not go to the "heart of the asylum claim." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002) (quoting *Ceballos–Castillo v. INS*, 904 F.2d 519, 520 (9th Cir.1990)).[2]

The legal precepts underlying Zheng's claim are well established. To establish

---

1. On appeal, Zheng contends for the first time that the IJ failed to make an explicit negative credibility determination. However, before the BIA, Zheng took the position that the IJ "erred in making a negative credibility finding in this case." Upon reviewing the IJ's oral decision, we conclude the IJ clearly did make an adverse credibility determination, as Zheng conceded before the BIA.

2. Zheng applied for asylum before May 11, 2005, and therefore the REAL ID Act's new standard for credibility determinations does not apply to him. *Chukwu v. Attorney General of the United States*, 484 F.3d 185, 189 (3d Cir.2007).

eligibility for asylum, an applicant must demonstrate past persecution or a well-founded fear of persecution that is both subjectively and objectively reasonable. *Singh v. Gonzales,* 406 F.3d 191, 195 (3d Cir.2005). An applicant who establishes that he or she has suffered past persecution on account of one of the five grounds enumerated in the INA "triggers a rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution." *Id.* at 196 (citing 8 C.F.R. § 208.13(b)(1)) (quotation omitted). Whereas asylum is discretionary, withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is mandatory if the applicant meets a more stringent standard—that it is "more likely than not" that he or she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if deported to his or her home country. *Id.* (quoting *Lukwago v. Ashcroft,* 329 F.3d 157, 182 (3d Cir.2003)). To obtain relief under the Convention Against Torture, an applicant must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. *Toure v. Attorney General of the United States,* 443 F.3d 310, 317 (3d Cir.2006).

We have recognized that an alien may be eligible for asylum if the persecution that he has suffered, or has a well-founded fear of suffering, is on account of a political opinion the applicant actually holds or on account of one the foreign government has imputed to him. *Singh,* 406 F.3d at 196 (quotation omitted). In determining whether persecution existed on account of

political opinion, we focus on whether the persecutor has attributed a political view to the victim and acted on that attribution. *Id.*

Here, the basis for the BIA's dismissal of Zheng's appeal is not entirely clear. Rather than explicitly adopt the IJ's adverse credibility finding, the BIA stated that it was adopting and affirming the IJ's oral decision only "insofar as she found that respondent had not satisfied the burden of proof for the requested relief." However, the BIA's analysis appears to affirm the IJ's adverse credibility finding because the BIA expressed approval of the IJ's findings that Zheng's claims were implausible and lacking in detail.[3] However—although the issue was not analyzed by the IJ—the BIA went on to consider whether Zheng had presented adequate corroborating evidence for his claims. The BIA "observe[d]" that Zheng had presented inadequate corroborating evidence, adding that "the documentary evidence submitted at the hearing was minimal, consisting of a letter from the respondent's father, and a letter from a Falun Gong practitioner in New York." Zheng's putative failure to present adequate corroborating evidence appears to have been the basis for the BIA's holding that Zheng "was unable to establish past persecution or a well-founded fear of persecution."

As we have previously held, the BIA may sometimes require "otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." *Abdulai v. Ashcroft,* 239 F.3d 542, 554 (3d Cir.2001). The BIA has adopted rules which require corroboration in in-

---

**3.** Thus, the instant case is distinguishable from cases where we have previously applied the rule that, where the BIA makes no explicit findings about an applicant's credibility, we will proceed as if the applicant's testimony were credible. In the cases in which we have applied this rule, the BIA has made no find-

ings of its own regarding credibility, assumed credibility, or indicated generally that it found the applicant credible. *See Lusingo v. Gonzales,* 420 F.3d 193, 197 n. 5 (3d Cir.2005); *Li v. Attorney General,* 400 F.3d 157, 163–64 (3d Cir.2005); *Kayembe v. Ashcroft,* 334 F.3d 231, 235 (3d Cir.2003).

stances where it is reasonable to expect such proof from a witness and there is no satisfactory explanation for its absence. *Toure*, 443 F.3d at 323. We adopted the BIA's rules "as our own" in *Abdulai* and formulated a three-part inquiry: (1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of the applicant's explanation for its absence. *Id.; see also Mulanga v. Ashcroft,* 349 F.3d 123, 133–34 (3d Cir.2003) (discussing *Abdulai* ).[4] Neither the BIA nor the IJ engaged in the foregoing three-part inquiry here. Zheng was not given notice of what corroboration was expected, nor was he given an opportunity to present an explanation for his putative failure to provide such corroboration. *See Chukwu,* 484 F.3d at 192. Indeed, no testimony regarding these issues was ever developed.[5] Under these circumstances, we are obliged to remand. *See Toure,* 443 F.3d at 323 ("We have repeatedly held that the BIA's ... failure to engage in the three-part inquiry described above requires that the BIA's findings regarding corroboration be vacated and remanded."); *Voci v. Gonzales,* 409 F.3d 607, 616–617 (3d Cir.2005) (remanding where it was unclear from the BIA's opinion whether the BIA believed the applicant had failed to provide adequate corroboration, and where, even if this had been clear, the BIA did not apply the three-part *Abdulai* inquiry); *Kayembe,* 334 F.3d at 238–239 ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning.")

For the foregoing reasons, we will grant the petition for review, and remand the case to the BIA for clarification of the basis for its dismissal and for further proceedings consistent with this opinion.

---

4. The Government contends that the BIA's "commentary" regarding corroboration was made in the form of observations, not holdings, and therefore does not trigger the three-pronged test detailed in *Abdulai.* We disagree, given that the BIA's statements about corroboration were immediately followed by the following holding: "In light of the foregoing, the respondent is unable to establish past persecution or a well-founded fear of persecution."

5. We have held that the REAL ID Act does not change our rules regarding the duty to develop the applicant's testimony, and in particular, to develop it in accord with the *Abdulai* steps. *Chukwu,* 484 F.3d at 192.