

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2008

# Ozdemir v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2564

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Ozdemir v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1310.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1310

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2564
_____

ISMAIL OZDEMIR,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A95 820 936)
Immigration Judge:  Honorable Eugene Pugliesi

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 9, 2008

Before: McKEE, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed: April 29, 2008)
_____

OPINION
_____

PER CURIAM

Ismail Ozdemir has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of

Ozdemir's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

Ozdemir is a native and citizen of Turkey. In 2001, he was admitted into the United States as a non-immigrant visitor, but he overstayed his visa. He was placed in removal proceedings and conceded removability. Ozdemir applied for asylum, withholding of removal, and CAT relief. The IJ held an evidentiary hearing on Ozdemir's claims on September 28, 2005.

Ozdemir testified about his life in Turkey as an ethnic Kurd. He stated that in grade school, teachers punished him for speaking Kurdish at school with his classmates by hitting him on the hand and legs and forcing him to stand by the wall. In 1994, he moved to Istanbul with his family. While in Istanbul, he joined the Hadep political party, a party that advocated for Kurdish rights. He testified that he served tea and coffee at Hadep meetings. Ozdemir was asked whether he had ever been harmed because of his Hadep membership, and he responded that he was "disrespected" and that people did not talk to him because he is Kurdish.

He also testified regarding his injured nose and his experience with the Turkish army. He stated that in 1996, his nose was injured and bleeding as a result of being beaten by a police officer. At the hospital, he was told that nothing was wrong with him and was sent home; he speculated that he was denied medical treatment because of the

2

Kurdish phrases displayed on his shirt.  In 1999, he underwent a physical examination to join the Turkish army, and the army physician informed him that his nose had been broken.  He joined the army in 2000, where he was given the worst job assignments and was beaten because he is Kurdish.  Ozdemir stated that he was hit on the feet numerous times.  After his time in the military, Ozdemir stated that he worked for several months and then came to the United States.  He testified that he feared being killed if he returned to Turkey.  He noted that two weeks before the hearing, his mother received a telephone call asking whether he had returned home, but when she asked who was calling, the caller ended the call.

Ozdemir was asked to clarify his testimony on cross-examination.  When asked to explain why his written statement indicates that his nose was broken in 2001, not in 1996, Ozdemir testified that he first learned that it was broken during his army physical.  When questioned about why his testimony differed from his written statement indicating that his nose was broken during an incident in 2001, when police poured cold water on him and others during a Kurdish new year celebration, took them to jail, and beat them, breaking his nose in the process, Ozdemir stated that the beating occurred but his nose was broken on a previous date.  He further stated that he was with Hadep for about one and-a-half years when his house was burned.  Ozdemir was also asked why his written statement indicates that he joined the military in 1999 when he testified that he joined in 2000; his response was that 1999 was when he passed his military physical.  Ozdemir presented no

documentary evidence regarding his involvement with Hadep or his military service.

The IJ denied relief. The IJ found that Ozdemir was ineligible for asylum because his asylum application was not filed within one year of his arrival in the United States. See 8 U.S.C. § 1158(a)(2)(B). The IJ further found that Ozdemir lacked credibility in his testimony in support of his withholding and CAT claims, noting that his testimony was inconsistent with his various written statements. The IJ further noted that Ozdemir's testimony mostly concerned his Kurdish ethnicity in general and dealt little with his Hadep affiliation, in contrast with his written statements. On April 30, 2007, The BIA issued a separate opinion dismissing the appeal. The BIA agreed that the asylum application was untimely. The BIA also concluded that Ozdemir presented confusing and conflicting testimony and written materials, noting the discrepancies regarding his broken nose and the date when he joined the military, as well as the lack of corroborative evidence of his injury, military service, or Hadep activities. Furthermore, the BIA concluded that Ozdemir failed to establish the likelihood of persecution or torture to obtain relief. This petition for review followed.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). Our review is for substantial evidence, that is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the

4

asylum claim.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal citation omitted). We must affirm "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citations omitted).[1]

Ozdemir does not challenge the agency's determinations regarding his eligibility for asylum[2] or for CAT relief, so we deem those issues waived and will not address them here. To prevail on his claim for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), it is Ozdemir's burden to show that more likely than not he will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if removed to his home country. See Singh v. Gonzales, 406 F.3d 191, 196 (3d Cir. 2005). In determining whether persecution existed on account of political opinion, we focus on whether the persecutor has attributed a political view to the victim and acted on that attribution. Id. at 196. Ozdemir also brings due process claims that he was denied the opportunity to be heard at a meaningful time in a meaningful manner. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001).

First, Ozdemir challenges the IJ's finding that he was not credible. He focuses on

---

[1] Ozdemir applied for asylum before May 11, 2005, and therefore the REAL ID Act's new standard for credibility determinations does not apply to him. Chukwu v. Attorney General of the United States, 484 F.3d 185, 189 (3d Cir. 2007).

[2] We note that we generally lack jurisdiction to review factual or discretionary determinations related to the timeliness of an asylum application. Sukwanputra v. Gonzales, 434 F.3d 627 (3d Cir. 2006).

5

the discrepancies between his testimony and his written statements concerning the date he joined the military, arguing that the discrepancy was minor and tangential to his claim, having clarified during hearing that 1999 was the year of his military physical examination, while 2000 was the year when actual service commenced. However, Ozdemir ignores the other specific aspects of his testimony that the IJ called into question. For example, on one hand, he testified in detail regarding having his nose broken in 1996, the hospital visit and the denial of medical treatment that followed, and his later discovery of the extent of his injuries at his military physical. On the other hand, that testimony was in conflict with his written statement, in which he detailed a different series of events leading to him having his nose broken during an encounter with police in 2001, which involved being jailed in the aftermath of a Kurdish celebration. Also, he testified that his participation in Hadep involved serving coffee and tea at meetings, and that he was not harmed because of his Hadep party activities. However, his written statement describes his participation in election campaigns and education outreach programs, resulting in his arrest, detention, and abuse by police. These inconsistencies involve more than a discrepancy in date. Indeed, Ozdemir's varying accounts of events directly impacts his claim of persecution. We conclude that the adverse credibility finding was based on specific reasonable, substantial evidence supported by the record.

Next, Ozdemir contends that the IJ failed to make an individualized determination in his case, resulting in a due process violation. See Abdulai, 239 F.3d at 549. He argues

6

that the IJ erroneously found his testimony not credible and ignored his testimony regarding the abuse he suffered in Turkey. Because we conclude that the IJ's credibility finding was not erroneous, we are unpersuaded by this argument.

Finally, Ozdemir argues that he was denied a fair hearing because the finding that he did not testify credibly stemmed from an incompetent, or at least questionable, translation by the interpreter at the hearing. Ozdemir asserts in his brief that he was "unfamiliar with the Kurdish dialect of the interpreter." Petitioner's Brief at 16. In support, he refers generally to two pages of the hearing transcript, where Ozdemir was asked if he was having any trouble understanding the interpreter, and he responded that there were "some words" that he did not understand. (A.R. 133-34.) Beyond this bare reference, Ozdemir does not explain how any mistranslations negatively affected the outcome of the proceedings. We are hard-pressed to accept the argument that the IJ's finding as to credibility was rooted in poor translation, especially where the record reflects that Ozdemir's counsel specifically requested the very translator at issue in light of the translator's certification to translate the Kurdish dialect spoken by Ozdemir.[1] The IJ did state his reluctance to disqualify the translator unless absolutely necessary, but given the record in this case, we discern no error here.

We will deny the petition for review.

[1] The record also reflects that the IJ granted a continuance so that Ozdemir's counsel could identify the particular translation needs for the merits hearing. As directed by the IJ, counsel submitted a letter naming the Kurdish dialect Ozdemir spoke. The letter also identified the translator at issue, by name, as a recommendation.