

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2005

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-2788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Singh v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1106.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1106

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2788

KULVIER SINGH,

Petitioner

v.

*ALBERTO R. GONZALEZ, Attorney General
of the United States,

Respondent

* Substituted pursuant to Rule 43c, F.R.A.P.

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A78-513-784)

Argued October 26, 2004

Before: NYGAARD, AMBRO,
and VAN ANTWERPEN, Circuit Judges

(Opinion filed May 5, 2005)

Parker Waggaman, Esquire
Amy N. Gell, Esquire (Argued)
Gell & Gell
299 Broadway, Suite 620
New York, NY   10007

*Attorney for Petitioner*

Peter D. Keisler
   Assistant Attorney General
   Civil Division
Mary Jane Candaux
   Senior Litigation Counsel
William C. Erb, Esquire (Argued)
Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
United States Department of Justice
Office of Immigration Litigation
P.O Box 878
Ben Franklin Station
Washington, DC   20044

*Attorneys for Respondent*

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Kulvier Singh petitions for review of the order of the Board of Immigration Appeals ("BIA") denying his application for asylum and withholding of removal because Singh had not demonstrated that he was persecuted, or had a well-founded fear of persecution, on account of a ground enumerated in the Immigration and Nationality Act ("INA"). That order reversed the decision of the Immigration Judge ("IJ"). We grant the petition.

## I. Factual Background and Procedural History

Singh, a native and citizen of India, arrived in the United States on February 23, 2001, when he was fifteen years old. Singh was born in the state of Punjab, and he and his parents are religious Sikhs.[1] He testified that he came to the United States because the Indian police were "after" him and his father and were attempting to kill them because of his father's activities in working for Khalistan, a putative independent state for Sikhs. Singh and his father were members of Shirdarval Sahib, one of

---

[1] The IJ found that Singh was "very credible", and the BIA did not disturb this finding. Therefore, we give Singh the benefit of the BIA's acceptance of his credibility, and our discussion of the factual background of this case is principally based on Singh's testimony at his hearing before the IJ.

two groups under the Akali Dal, a political party in Punjab.  The leader of the Akali Dal told his followers that Khalistan would be an independent state where Sikhs would "get their rights."

Beginning when Singh was ten years old, the police often came to his home and took his father away for questioning.  In October 2000, the police came to Singh's house while he was sleeping, began beating Singh's father, and then took Singh and his father to a police station.  While at the house, the police told Singh's father that he had arms and ammunition in the house, which Singh's father denied.[2]  The police also searched the house.

The police kicked Singh and his father while transporting them to the police station.  When they arrived at the station, Singh was pushed into a corner and watched while his father was stripped naked and beaten by the police.  Singh began to scream, at which point the police began to beat him also.  Singh believed that his father was beaten for half an hour or an hour and that he himself was beaten for ten to fifteen minutes—to the point of losing consciousness. While the police were beating the father, they talked about his work for Khalistan, which Singh understood as the officers' way of telling his father "we have told you so many times not to work for Khalistan.  Now, by beating this way, we are going to tell you that, how to ask for

---

[2]One of the officers who arrested Singh and his father was apparently also a Sikh.

Khalistan."

Later, the police told Singh and his father that a leader of their village and others had come to get them out, and the police let them go. Before their release, the police inspector reiterated that Singh's father had been told many times not to work for Khalistan's sovereignty and had not listened even though the police had beat him. The inspector then threatened that, if Singh's father kept engaging in these political activities, the police would kill Singh. Singh and his father could not walk when they were released, and they were taken to a dispensary where they were given medication.

After Singh returned from the hospital six or seven days later, his parents sent him to his uncle's house, where he stayed for about a month. Singh's uncle told Singh that his father had been taken away again by the police because a dead body was found near their family's lands and that the police used this event as an excuse to take his father. He also told Singh that the police made Singh's mother give them the names and addresses of all their relatives so that the officers could look for Singh.

A different uncle then took Singh in, but the police found him there. When Singh's uncle saw the police coming, he took Singh to hide for a few hours at a neighbor's house. Singh's uncle reported that the police said they would kill Singh if they found him. Singh's uncle and grandfather then made arrangements for Singh to come to the United States. Singh

5

testified that he is afraid that, if he is sent back, the police "will get [him] at the airport because they will check [his] card or one way or the other they will find out, and the police will take [him] and they are going to kill [him]."

The Immigration and Naturalization Service[3] ("INS") initiated removal proceedings against Singh on February 24, 2001 by issuing a Notice to Appear, alleging that Singh was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for arriving in the United States without a valid visa. Singh conceded removability but applied for asylum and withholding of removal. On September 9, 2001, the IJ granted both applications. The IJ found Singh to be "very credible" and further found that Singh had suffered persecution "on account of his perceived political opinion as being both his father's son and a Sikh himself." The IJ also found that it is more likely than not that Singh will be persecuted if returned to India.

The INS appealed, and the BIA upheld the IJ's credibility finding but vacated the grant of asylum and withholding of removal, stating that even if Singh had been persecuted, he had not "met his burden of proving persecution on account of one of

[3]As a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the INS has since ceased to exist as an agency within the Department of Justice, and its enforcement functions have been transferred to the Department of Homeland Security.

the five enumerated grounds in the [INA]."[4] Singh's petition for review of the BIA's decision is now before us.

## II. Jurisdiction and Standard of Review

Under 8 U.S.C. § 1252(a), we have jurisdiction to hear a petition for review from a final order of the BIA. We must uphold the BIA's factual findings if they are supported by substantial evidence. *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 296 (3d Cir. 2004). Further, the BIA's denial of asylum can be reversed "only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *see also Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001).

---

[4]The BIA also apparently did not question that Singh was persecuted, as it did not address the INS's argument that the IJ's decision should be reversed because the harm Singh suffered did not rise to the level of persecution. *See* A.R. at 2 ("On appeal, the Service asserts that the respondent failed to meet his burden of proving eligibility for asylum and withholding of removal because the respondent was not credible, the harm he suffered did not amount to persecution, and he has failed to establish that the harm he did suffer was on account of imputed political opinion (his father's) . . . . While we agree with the Service's argument relating to 'on account of,' we do not find adequate grounds to reverse the Immigration Judge's credibility determination.").

7

### III. Discussion

The Attorney General and his delegates may grant asylum to any alien who qualifies as a refugee under the INA. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is "unable or unwilling" to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Aliens have the burden of supporting their asylum claims. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "Testimony, by itself, is sufficient to meet this burden, if 'credible.'" *Id.* (citing 8 C.F.R. § 208.13(a)).

To establish eligibility for asylum, an applicant must demonstrate past persecution by substantial evidence or a well-founded fear of persecution that is both subjectively and objectively reasonable. *Lukwago v. INS*, 329 F.3d 157, 177 (3d Cir. 2003). An applicant who establishes that he or she has suffered past persecution on account of one of the five grounds enumerated in the INA "triggers a rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution." *Id.* at 174 (citing 8 C.F.R. § 208.13(b)(1)). Whereas asylum is discretionary, withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is mandatory if the applicant meets a more stringent standard—that it is "more likely than not" that he or she will be persecuted on account of race, religion, nationality,

8

membership in a particular social group, or political opinion if deported to his or her home country. *Id.* at 182.

Singh advances two principal arguments. The first is that the BIA erred in determining that he did not establish imputed political opinion. The second is that the BIA should have applied "mixed motive" case law in reaching its decision and upheld the IJ's grant of asylum because the harm Singh suffered at the hands of the Indian police was, in large part, on account of one of the grounds enumerated in the INA—imputed political opinion.[5] We agree with him on both counts.

_____

[5] Singh may also have a strong argument that the BIA's conclusory statement that it did "not agree with the Immigration Judge's determination that the respondent has established persecution on account of . . . membership in a particular social group" is not supported by substantial evidence because being his father's son is a characteristic he cannot change. Our Circuit has adopted the BIA's definition of "particular social group" as referring to "'a group of persons all of whom share a common, immutable characteristic.'" *Lukwago*, 329 F.3d at 171 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (1985), *overruled in part as stated in Matter of Mogharrabi*, 19 I. & N. Dec. 439 (1987)). We have also noted that the BIA has identified kinship ties as an innate, shared characteristic. *Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (discussing *Matter of Acosta*, 19 I. & N. Dec. at 233); *see also Lopez-Soto v. Ashcroft*, 383 F.3d 228, 235 (4th Cir. 2004) (noting that all the Courts of Appeal that have considered the issue have held that "family" qualifies as a

A.	*Imputed Political Opinion*

We have recognized that an alien may be eligible for asylum if the persecution he suffered, or has a well-founded fear of suffering, is "'on account of a political opinion the applicant actually holds or on account of one the foreign government has imputed to him.'" *Lukwago*, 329 F.3d at 181 (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 165 n.10 (3d Cir. 1998)); *see also In re S-P-*, 21 I. & N. Dec. 486, 489 (BIA 1996) ("Persecution for 'imputed' grounds (*e.g.*, where one is erroneously thought to hold particular political opinions . . . ) can satisfy the 'refugee' definition."). In determining whether persecution existed on account of political opinion, we focus on whether the persecutor has attributed a political view to the victim and acted on that attribution. *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir. 1997).

The BIA did not engage in any substantial discussion regarding its conclusion that Singh had not established imputed political opinion, but it did "acknowledge" that Singh's youth

---

particular social group and joining in this holding) (collecting cases). Unfortunately, despite Singh's counsel's representation at oral argument that she hoped she had not waived his particular social group argument, we conclude that we cannot reach the merits of this issue because it was not raised in Singh's brief. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

contributed to his "lack of knowledge about his father's political and other affiliations."[6] There is nothing in the case law that suggests that an asylum applicant claiming imputed political opinion is required to have any knowledge about the political belief that is being imputed to him. The focus is instead on whether this attribution has in fact occurred, and that is what we look at here.

In a case presenting facts similar to ours, the Ninth Circuit Court of Appeals held that a petitioner's father's political opinion was *not* imputed to the petitioner when guerillas sought out and beat up only the petitioner's father, who, like Singh's father, was a member of the Akali Dal. *Id.* at 1490. However, the *Sangha* court noted that "[i]f the [militant separatist group] had imputed the Akali Dal political views to

---

[6]The BIA also noted that one of the officers who arrested Singh and his father and one of the officers at the police station were Sikhs. The Government has also emphasized this in its response to Singh's petition. Although this fact might be relevant to a determination of whether Singh was persecuted, or had a well-founded fear of persecution, on account of his religious beliefs, Singh has not pressed such an argument before us. The record supports the IJ's finding that not all Sikhs are separatists. Thus, the fact that some of the officers involved in the events at issue in this case may also have been Sikhs does not undercut Singh's argument that he was mistreated on account of having his father's separatist political views imputed to him.

11

[petitioner], it seems likely that the [group] would also have sought and beat up [petitioner]." *Id.* The facts in our case fit well into the hypothetical posed in *Sangha*.

Here the police did not only seek out and beat Singh's father, whose political views were known to them; they also arrested, beat, threatened, and repeatedly sought out Singh himself. Singh, who was deemed "very credible," testified about his father's prior arrests, his father's activities for a free Khalistan, and the faction of the Akali Dal to which his father belonged. He also testified that he was a member of the same faction of the Akali Dal as his father. Singh further testified that while the police were beating him and his father, they said that they were trying to stop Singh's father from continuing his work. This context poses a classic imputed political opinion case. Singh's credible, uncontradicted testimony compels the conclusion that the Indian police attributed his father's separatist political opinion to him.

This determination nonetheless does not end our analysis. The Government also asserts that we should deny Singh's petition for review because he failed to establish that any imputed political opinion was "the motivating factor" behind his arrest and other mistreatment. We must therefore consider Singh's argument that the BIA should have applied a "mixed motive" analysis to his case and should have concluded that he was eligible for asylum because he was persecuted, in significant part, on account of imputed political opinion.

12

B.    *"Mixed Motive" Analysis*

The Government argues that the motivating factor behind
Singh's arrest (as well as his father's) was a legitimate law
enforcement purpose—investigating the police's suspicion that
there were illegal firearms in the family home.  The Government
is correct that "prosecution for criminal violations of fairly
administered laws is ordinarily not one of the statutory grounds
upon which a claim for asylum can be based." *Janusiak v. INS*,
947 F.2d 46, 48 (3d Cir. 1991).  However, we (and the BIA
itself) have recognized that an applicant for asylum need not
prove that the persecution he or she suffered (or fears suffering
in the future) occurred *solely* on account one of the five grounds
enumerated in the INA.  Rather, an applicant must show that the
persecution was motivated, *at least in part*, by one of the
protected characteristics.  *See Amanfi v. Ashcroft*, 328 F.3d 719,
727 (3d Cir. 2003) (noting that the BIA's decision in *In re S-P-*
"held that an alien need only prove that the persecutor was
motivated in significant part by a protected characteristic"); *In
re S-P-*, 21 I. & N. Dec. at 497 (holding that an alien had
established eligibility for asylum where, although there was a
legitimate government attempt to gather intelligence information
from the alien, "an additional underlying reason for the abuse
was the belief that the victim held political views opposed to the
government."); *see also Chang v. INS*, 119 F.3d 1055, 1065 (3d
Cir. 1997) (granting petition for review where, *inter alia*,
petitioner had a well-founded fear of persecution because the
Chinese government, which may have been partially motivated

13

by "legitimate concerns of protecting confidential state information", "was also motivated, at least in part, by [petitioner's] opposition to official policy").[7]

Singh may therefore establish eligibility for asylum even if, as the Government contends and the BIA found, there was some "legitimate security purpose" (searching for weapons) behind his arrest and mistreatment, if he establishes that the mistreatment was *also* motivated by the police's attribution of his father's political opinion to him. As stated above, the record in this case compels the conclusion that Singh established an imputed political opinion. Singh also testified at length that he was beaten, arrested, and threatened *because* of that imputed political opinion.

---

[7]Other Courts of Appeal have also adopted the "mixed motive" mode of analysis in asylum cases. *See, e.g., Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir. 1995) ("[P]ersecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements [to establish eligibility for asylum] are satisfied."); *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994) ("The plain meaning of the phrase 'persecution on account of the victim's political opinion[]' does not mean persecution *solely* on account of the victim's political opinion. That is, the conclusion that a cause of persecution is economic does not necessarily imply that there cannot exist other causes of the persecution.") (emphasis in original).

14

As already recounted, while the police were beating Singh's father, they talked about his work for a free Khalistan, and Singh understood these statements as equating to the police telling his father that they were beating him in order to get him to stop this work. Singh also testified that, when he and his father were released, the police inspector threatened that Singh would be killed if his father continued his activities on behalf of Khalistan. These statements demonstrate that Singh's arrest, subsequent beating, and particularly the threats to his life, were motivated in significant part by the police's desire to punish Singh and his father for the father's political activities regardless of any legitimate law enforcement purpose the police may have had in investigating Singh's father for harboring illegal weapons. *Cf. In re S-P-*, 21 I. & N. Dec. at 494 (stating that among the factors that should be considered in deciding mixed motive cases are "indications in the particular case that the abuse was directed toward modifying or punishing opinion rather than conduct (*e.g.*, statements or actions by the perpetrators or abuse out of proportion to nonpolitical ends)"). Our conclusion that the police were largely motivated by the political opinion in favor of a separate state for Sikhs that they imputed to Singh is bolstered by the fact that there is no evidence in the record that Singh (or his father, for that matter) was ever questioned about the weapons that were supposedly being kept in his home during his beating at the police station. *Cf. id.* at 495 (applying the mixed motive analysis and finding that the alien was persecuted on account of his political views because, among other things, "the harm inflicted upon the

15

applicant in this case went well beyond the bounds of legitimate questioning for intelligence gathering and continued long after questioning for this purpose had ended.").

Despite this compelling evidence in the record that Singh was persecuted—in large part, if not entirely—on the basis of the political opinion that was imputed to him, the Government contends that he is nonetheless not entitled to relief in light of our decision in *Amanfi*, 328 F.3d 719. This case, however, is nothing like *Amanfi*. There we held that the mere "mention of religion" in the petitioner's testimony was insufficient to establish persecution on account of religion under the mixed motive framework when the record demonstrated that the petitioner's mistreatment was based on a dispute with private actors regarding his father's preaching "and not Amanfi's or his father's belief in Christianity." 328 F.3d at 727. As discussed above, Singh did much more than merely mention his father's political opinion in relating his story at the hearing before the IJ. The bulk of Singh's testimony, in stark contrast to the testimony in *Amanfi*, concerned his father's political activities and the connection between those activities and the harm that Singh suffered in the past and fears suffering in the future.

Moreover, the BIA itself explicitly acknowledged that Singh's arrest was "probably related to [his] father's political affiliations" in addition to a "legitimate security purpose." The BIA's failure to apply a mixed motive analysis to Singh's case after noting that there was likely more one than one reason for

16

Singh's arrest, one of which was a protected ground under the INA, is inexplicable. When the mixed motive framework is properly applied, Singh's credible, unrebutted testimony compels the conclusion that the mistreatment he suffered at the hands of the police after his arrest and the threats that were made against his life were motivated, at least in significant part, by the political opinion that was imputed to him. Singh has therefore established eligibility for asylum.[8]

## IV. Conclusion

Because the record compels the conclusion that Singh established that the Indian police imputed his father's political opinion to him and mistreated him, at least in large part, based

---

[8]Because we have determined that Singh is entitled to relief on the merits of his asylum claim, we need not reach his additional argument that the BIA's decision ran afoul of the Administrative Procedure Act because the legal basis of the decision was not properly explained. We nonetheless note that we do not find this argument persuasive. "When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning." *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003). Although we have found the BIA's reasoning to be erroneous, we do not believe this is a case in which the BIA's reasoning was not adequately explained in its decision such that we could not engage in meaningful review.

17

on that opinion, we grant Singh's petition for review. The BIA did not question Singh's persecution, *see* note 4 *supra*, and the record is completely devoid of evidence rebutting the conclusion that Singh has a well-founded fear of persecution based upon his past persecution and the threats the police have made against his life. We therefore conclude that there are no disputed issues remaining to be resolved by the BIA on Singh's asylum claim.

However, we recognize that the decision whether to grant asylum lies within the discretion of the Attorney General and that the Supreme Court has instructed that appellate courts should, upon reversing an agency decision (particularly a decision of the BIA), remand the matter to the agency except in rare circumstances. *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). Thus, we remand this case to the BIA for further proceedings consistent with this opinion as to Singh's asylum claim and his claim for withholding of removal (that was previously summarily denied by the BIA).[9]

---

[9]As the Government pointed out in its November 3, 2004 letter to our Court, Singh also sought relief under the Convention Against Torture ("CAT") before the IJ. The Government suggested that we remand this case to the BIA for consideration of that claim. The IJ found, in the context of discussing whether Singh had suffered past persecution and/or had a well-founded fear of future persecution, that Singh had been tortured. However, the IJ granted Singh relief only on his asylum and withholding of removal claims without mentioning

18

his CAT claim. Singh argued in his November 3, 2004 letter to us that the record in his case supported his claim for CAT relief. He did not, however, raise the issue of CAT relief in his opening brief before us. Therefore, although the Government may be correct that, as a general matter, the BIA errs in failing to consider a CAT claim once it is raised, we are unfortunately compelled to conclude that, due to his counsel's lack of diligence, Singh has waived that argument here. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005) (holding that petitioner waived any argument relating to the denial of her CAT claim by not presenting it in her brief). We thus leave to the BIA the question whether Singh's CAT claim should be reinstated on remand.

19