

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2008

# Galo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4874

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Galo v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1227.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4874
_____

ARBEN GALO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96-017-570)
Immigration Judge:  Miriam K. Mills

_____

Argued March 3, 2008
Before:  SCIRICA, *Chief Judge*, FISHER and ROTH, *Circuit Judges*.

(Filed: May 14, 2008)

Thomas C. Brannen (Argued)
Elizabeth C. Surin
Morley, Surin & Griffin
325 Chestnut Street, Suite 1305-P
Philadelphia, PA  19106
        *Attorneys for Petitioner*

Richard M. Evans
Nancy E. Friedman (Argued)
Marion E. Guyton
United States Department of Justice

Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Arben Galo petitions for review of the Board of Immigration Appeals' ("BIA's") dismissal of his appeal from the decision of the Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition insofar as it relates to Galo's claims for asylum and withholding of removal. We will grant the petition with regard to Galo's CAT claim and remand to the BIA.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Galo was born on July 27, 1983, in Albania. His father began participating in the Democratic Party of Albania (DP) when Galo was a child. Galo became active with the DP Youth Group at age fourteen. After Albania's transition from communism, power in the 1990s alternated between the Socialist Party and the DP. In Galo's village, support

2

for the communists remains strong.  The police in the village are Socialist Party supporters.

In his affidavit and his testimony before the IJ, Galo related that his family was mistreated because of their affiliation with the DP.  Galo states that in 1996, he was beaten and detained overnight by the police, who accused him and his friends of "negatively affecting the youth of Albania."  In 1998, men in plain clothes ransacked his home and took his father to the police station, where he was detained for three days, beaten, and underfed.  In 1999, Galo participated in a peaceful DP demonstration in his village.  The police came to the demonstration and began to arrest demonstrators.  Upon learning Galo's name, the police beat and kicked him and said that he should remember to tell his father everything that happened.

In May 1999, Galo's father began receiving threats over the phone that his children would be kidnapped unless he began supporting the Socialist Party.  His father fled to Greece in September 1999 and prepared for the family to join him.  Galo, who was sixteen years old, did not join his father in Greece immediately because he did not feel scared.  Instead, he stayed in his village with his grandfather.

On November 24, 1999, Galo and two of his DP Youth Group friends were walking to a meeting regarding an upcoming DP youth conference.  They stopped at a convenience store.  Galo and one friend went into the store, but the third friend, Sami, stopped to talk to a man who approached him outside the store.  While Galo was paying

for a soft drink, he heard a gunshot. He, his friend, and the storekeeper went outside and saw Sami laying on the ground, while the man who had been talking to him was running away with a gun in his hand. Sami died from the gunshot wound. Galo reported the incident to the police; he says the police did not do anything in response to his report.

At 10:00 p.m. the same day, someone knocked on Galo's grandfather's door. When Galo's grandfather opened the door, Galo saw two men, including the man who had killed Sami. The men pushed Galo's grandfather aside and hit him, shooting their guns inside the house. Galo fled, but he learned the next day that the men had ransacked the house. They told Galo's grandfather than Galo had "seen too much" and was "a witness who could cause trouble." They threatened to kill Galo just like they killed his friend. Galo believes Sami's murder was politically motivated, and he says that prior to the murder, Sami had received threats that he should cease his DP activities.

Galo fled Albania six days later and joined his family in Greece, where he remained for three years. He states that he could not get permanent residency status in Greece and did not feel safe there because the Socialist Party is active in Greece, as it is in Albania.

Galo entered the US with an altered Italian passport in 2002. He was detained and referred to an IJ. On July 16, 2003, Galo submitted an I-589 Application for Asylum. After a hearing, the IJ found Galo not credible, denied all forms of relief, and ordered him removed to Albania. Galo appealed to the BIA.

4

The BIA stated that the credibility determination did not "comport with applicable caselaw in the United States Court of Appeals for the Third Circuit." The BIA explained that in light of contemporaneous country reports, "we cannot conclude that political violence is outside the realm of possibilities in Albania or that the applicant's story is necessarily incredible in light of country conditions." Despite this qualified rejection of the IJ's credibility finding, the BIA affirmed the IJ's determination that Galo was not eligible for relief, agreeing with the IJ that there was no nexus between the persecution Galo described and any protected ground. The BIA did not discuss the IJ's determinations with regard to withholding of removal and CAT protection; nevertheless, it dismissed Galo's entire appeal. Galo filed a timely Petition for Review.

II.

To the extent that "the BIA issues a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision. We must treat the BIA's findings of fact as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir. 2005) (internal quotation marks and citations omitted). To the extent that the BIA adopts the findings of the IJ, we review the decisions of both the IJ and the BIA. *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

We review the agency's factual findings under the deferential "substantial evidence" standard. *Gao v. Ashcroft*, 299 F.3d 266, 262 (3d Cir. 2002). Under this

5

standard, we will uphold the findings of the IJ and the BIA "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

III.

Galo asserts that the BIA erred in determining that he was not eligible for asylum, withholding of removal, or relief under the CAT. He argues that his persecutors were motivated by his political opinion, and therefore he qualifies for relief.

In order to qualify for asylum, an individual must prove that he has "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C § 1101(a)(42)(A). In order to qualify for withholding of removal, the applicant must demonstrate a "clear probability" that persecution will result if the applicant is removed to a particular country. *I.N.S. v. Stevic*, 467 U.S. 407, 413 (1984).

In order to qualify for relief under the CAT, the applicant must present evidence establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18. It consists of "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for purposes such as punishment, intimidation, coercion, or the obtaining of information or a confession. *Id.* An act is not considered torture if it is not "inflicted by

6

or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.*

A.

The BIA concluded that Galo did not qualify for asylum because the persecution he experienced was not based on one of the protected grounds (race, religion, nationality, membership in a particular social group, or political opinion). When the intruders came to Galo's grandfather's house on the night of Sami's murder, they threatened Galo because he had "seen too much" and was "a witness who could cause trouble." Thus, the threats were based on Galo's status as the witness to a crime, rather than on his political opinion.

Galo argues that he does not "bear the unreasonable burden" of establishing exactly why the intruders threatened him. He states that their actions were motivated at least in part by his political opinions, and this is sufficient to show persecution based on one of the protected grounds. Galo does not cite our "mixed motive" cases, which would provide the strongest support for his argument. *See, e.g., Singh v. Gonzales*, 406 F.3d 191, 197-98 (3d Cir. 2005); *Amanfi v. Ashcroft*, 328 F.3d 719, 727 (3d Cir. 2003). Even if we take the mixed motive cases into account, the IJ and BIA determined that Galo's persecutors were not motivated by Galo's political opinion, but instead by the fact that he had witnessed a murder.

7

There is substantial evidence in the record to support the determination that Galo was not persecuted based on one of the protected grounds, and therefore we will not disturb it. Because Galo's mistreatment was not based on one of the protected grounds, he does not qualify for asylum.

B.

In order to qualify for withholding of removal to a particular country, an alien must show a clear probability that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). The BIA concluded that there was no nexus between the threats and Galo's political opinion, so there is substantial evidence to support the determination that Galo does not qualify for withholding of removal.

C.

The BIA dismissed Galo's CAT claim without providing any reasoning for its decision. We have explained:

> A petition for protection under the [CAT] differs significantly from petitions for asylum or withholding of removal because the alien need not demonstrate that he will be tortured on account of a particular belief or immutable characteristic. *Matter of S—V—*, [21 I&N Dec. 1306 (BIA 2000)]. Rather, in assessing whether an alien is more likely than not to be tortured in the proposed country of removal, INS regulations identify a non-exclusive list of factors to consider: (1) evidence of past torture . . . ; (2) the possibility the alien could relocate to another part of the country where his torture is unlikely; (3) evidence of "gross, flagrant or mass violations of

8

human rights" in the country; and (4) any other relevant country conditions information. 8 C.F.R. § 208.16(c)(3).

*Amanfi*, 328 F.3d at 725.

The IJ denied Galo's CAT claim on the basis of the adverse credibility determination, but the BIA determined that Galo's story was "not necessarily incredible in light of country conditions." The BIA's conclusion that Galo was not threatened on account of his political opinion forecloses his claims for asylum and withholding of removal, but is not relevant to his claim to CAT relief. We are unable to determine, based on the record, why the BIA denied Galo's CAT claim. "In order for us to be able to give meaningful review to the BIA's decision, we must have some insight into its reasoning." *Awolesi v. Ashcroft*, 341 F.3d 227, 232-33 (3d Cir. 2003). We will remand so that the BIA can specifically consider Galo's CAT claim and provide insight that would allow us to review its decision on appeal.

## IV.

For the foregoing reasons, will we grant the petition for review and remand for further agency action on Galo's CAT claim only, in accordance with this opinion.