**Astrit VELIHAJ, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 07–3584.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 20, 2009.

Opinion filed: July 8, 2009.

---

Frank B. Lindner, Esq., Lindner & Lindner, Yardley, PA, for Petitioner.

Richard M. Evans, Esq., Christina B. Parascandola, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: AMBRO, FISHER and JORDAN, Circuit Judges.

## OPINION

PER CURIAM.

Astrit Velihaj, a native and citizen of Albania and a member of that country's Democratic Party, entered the United States in July 2001. He was charged as being removable pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i) ], based on his entry into this country without being admitted or paroled. Velihaj applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture, claiming that he feared persecution because two prominent mobsters had ransacked his home and threatened his life after he publicly identified them and a Socialist Party official as being involved in the illegal trafficking of women.

The Immigration Judge ("IJ") denied relief because Velihaj failed to demonstrate an adequate nexus between his fear of persecution and his political opinion, and because he did not show that the Albanian government was unable or unwilling to control his potential persecutors. The Board of Immigration Appeals ("BIA") dismissed Velihaj's appeal. The Board took administrative notice of the 2005 and 2006 State Department Country Reports, which documented the establishment of a witness protection program for organized crime cases, a 20–fold increase in the witness protection program budget, an absence of reports of police involvement in trafficking, and the Democratic Party's victory in the 2005 general election. Because the more recent Country Reports did not support Velihaj's claim, the Board rejected his argument that the IJ should have continued the proceedings pending publication of those Reports. This timely petition for review followed.

We have jurisdiction under INA § 242 [8 U.S.C. § 1252]. Where, as here, the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we review the decisions of both the IJ and the BIA. *See Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS,* 143 F.3d 157, 161 (3d Cir.1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft,* 333 F.3d 463, 471 (3d Cir.2003) (quoting

*Abdille v. Ashcroft,* 242 F.3d 477, 484 (3d Cir.2001)).

■ An applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]. To establish a well-founded fear of future persecution, an applicant must (1) provide credible testimony showing a genuine subjective fear of persecution, and (2) demonstrate as an objective matter that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir.2005) (citation and internal quotation marks omitted). "[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds." *Ndayshimiye v. Att'y Gen.,* 557 F.3d 124, 129 (3d Cir. 2009). An asylum applicant, however, need not demonstrate that the protected ground was the exclusive motivation behind the alleged persecution.[1] *See Singh v. Gonzales,* 406 F.3d 191, 197 (3d Cir. 2005) (noting that in a mixed-motive case, an alien need only "show that the persecution was motivated, at least in part, by one of the protected characteristics"). Nevertheless, an applicant must provide some evidence of motive, whether direct or circumstantial. *See Lie v. Ashcroft,* 396 F.3d 530, 535 (3d Cir.2005) (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

1. Because Velihaj applied for asylum before May 11, 2005, he is not subject to a provision in the REAL ID Act of 2005 that requires an alien applying for asylum in a mixed motive case to show "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason" for the alleged persecution. *See* INA § 208(b)(1)(B)(i) [8 U.S.C. § 1158(b)(1)(B)(i)]; *Ndayshimiye v. Att'y Gen.,* 557 F.3d 124, 128–29 (3d Cir.2009).

In this case, we believe that substantial evidence supports the conclusion that Velihaj failed to establish a nexus between his political opinion and his fear of persecution. Velihaj claimed that he traveled to Greece on his own accord in June 2000 to investigate trafficking in women. While there, Velihaj interviewed trafficking victims and learned that two mobsters, who were "supported" by a Socialist Party official, controlled most of the prostitutes in Athens. After he returned to Albania and reported his findings to Democratic Party leaders, Velihaj was warned that the mobsters he had identified were looking for him and would kill him. He fled to Greece the next day. A few months later, an article about Velihaj's investigation appeared in the Democratic Party newspaper "Nacionalisti." The article named Velihaj, published his photograph, and reported the names of the traffickers that Velihaj had uncovered. The day after the article was published, the mobsters went to Velihaj's house, destroyed property, and told his family that they knew he was in Greece and that they were going to find him. Fearing for his life, Velihaj traveled to the United States.

Although the evidence indicates that the threat to Velihaj's life may be real, it does not compel the conclusion that he fears persecution on account of his political opinion. He claimed that he will be harmed by the mobsters.[2] And while the Socialist Party official allegedly supports the mobsters, nothing in the record indicates that the mobsters are motivated, even partially, by Velihaj's membership in the Democratic Party or by the fact that Democratic Party leaders disseminated the details of his investigation. Rather, according to Velihaj, the mobsters seek to harm him solely because of his efforts to expose their identities. In addition, Velihaj's trip to Greece was not related to his membership in the Democratic Party. Instead, he went of his own volition because "somebody ... had to do something to stop [the trafficking]." Because there is no indication that the mobsters are seeking anything other than private revenge for Velihaj's exposure of their identities, we must conclude that he has failed to establish a nexus to a protected ground.

■ Even if Velihaj could establish a link between his fear of persecution and his political opinion, substantial evidence supports the conclusion that conditions in Albania have changed so as to make his fear no longer objectively reasonable on political grounds.[3] The BIA was permitted to take administrative notice of the Department of State Country Reports for 2005 and 2006, see 8 C.F.R. § 1003.1(d)(3)(iv), which indicated that the Democratic Party was victorious in the 2005 elections, that there were no reports of police involvement in trafficking, that prosecution of traffickers had improved, and that the Albanian government had taken substantial steps to develop a witness protection program.[4] In light of

2. Velihaj also testified that the police are unable or unwilling to protect him from the mobsters. But, even if the police were motivated by Velihaj's political opinion, as explained below, changed conditions in Albania undermine his claim.

3. We note the relatively low threshold represented by the "substantial evidence" standard. Our acceptance of the Board's conclusion, based on that standard, does not mean

that we take lightly the fear that Velihaj has expressed.

4. We reject Velihaj's contention that the BIA erred by taking administrative notice of the Country Reports without providing him with an opportunity to respond. Although he argued before the BIA that the IJ should have continued the proceedings until the publication of up-to-date Country Reports, once those

these changed country conditions, the Board was within its discretion to conclude that Velihaj does not have a well-founded fear of future persecution.

Because Velihaj failed to satisfy the lower statutory burden of proof required for asylum, he also necessarily failed to satisfy the clear probability standard for withholding of removal. *See Ambartsoumian v. Ashcroft*, 388 F.3d 85, 88–89 (3d Cir. 2004). Moreover, Velihaj failed to establish that it is more likely than not that he will be tortured upon his return to Albania. *See* 8 C.F.R. §§ 208.16, 208.18.

For the foregoing reasons, we will deny the petition for review. We do so with the request that the Government consider whether humanitarian parole for Velihaj is possible in the United States or whether there can be coordination with the Albanian government for Velihaj's inclusion in its witness protection program should he request it.

Reports were issued Velihaj failed to explain how they affected his case.