NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4495
_____

CHHYUMI GURUNG,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent


_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Annie S. Garcy
(No. A087-785-255)
_____


Submitted Under Third Circuit LAR 34.1(a)
October 20, 2014

Before: AMBRO, FUENTES, and NYGAARD, Circuit Judges

(Opinion filed : November 17, 2014)


_____

OPINION[*]
_____


AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Chhyumi Gurung petitions for review of the Board of Immigration Appeals's decision affirming the Immigration Judge's order of removal. For the following reasons, we deny the petition.

## I.        Facts and Procedural History

Gurung was born in 1989 in Nepal to Tibetan parents. In 2008, she was arrested three times at pro-Tibet rallies. Each time, she alleges, Nepali police interrogated and beat her before releasing her after between half a day and two days' detention. In January 2009, Gurung fled to the United States, entering with a Nepali passport and a student visa. In November of that year, she applied for asylum, claiming that she was a stateless Tibetan refugee. The Department of Homeland Security ("DHS") sought her removal, and Gurung moved for withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). The IJ found that Gurung was a citizen of Nepal because of her passport and because she did not have a Tibetan "Green Book," a passport-like document issued to many Tibetan refugees. Though Gurung established a likelihood of torture and persecution on the basis of her political opinions if she were removed to China, this was not true if Gurung were removed to Nepal. The IJ therefore denied Gurung's application for asylum and granted withholding of removal as to China only. The BIA affirmed, and Gurung petitions our Court for review.

## II.    Jurisdiction and Standard of Reivew

We have jurisdiction under 8 U.S.C. § 1252(a)(1); the BIA had jurisdiction under 8 C.F.R. § 1003.1(e)(4)–(6).  Where, as here, the BIA issues a reasoned opinion, we review that and look to the IJ's ruling only insofar as the BIA defers to it.  *Huang v. Attorney Gen.*, 620 F.3d 372, 379 (3d Cir. 2010).

We will not disturb the findings of fact that underpin the BIA's decision if "they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be compelled to conclude otherwise."  *Id.* (citations and internal quotation marks omitted).  We review the BIA's legal conclusions *de novo*, but we accord deference to its reasonable interpretations of immigration laws.  *Id.*

## III.    Discussion

Gurung argues: (1) the IJ denied her due process of law in considering her Nepali passport; (2) the finding that she is a citizen of Nepal is unsupported by substantial evidence; (3) the IJ failed to consider whether she had offered a "satisfactory explanation" for her lack of a Green Book, *Abdulai v. Ashcroft*, 239 F.3d 542, 551 (3d Cir. 2001); and (4) she established past persecution and a likelihood of future persecution, entitling her to asylum and withholding of removal under the INA and CAT.

### A.    Due Process

At Gurung's asylum and removal hearing, the IJ informed the parties that it would be useful for her to consider the passport Gurung used to enter the United States, and she admitted Gurung's passport into evidence after the record was shut and the parties had

3

made their closing arguments. Gurung contends that the request for the passport (1) amounted to advocacy on the Government's behalf and (2) that admitting the passport late deprived her of a meaningful opportunity to contest its relevance to her claimed statelessness, both in violation of the Due Process Clause of the Fifth Amendment.

The IJ did not advocate for the Government when she asked DHS to serve the passport on Gurung and enter it into the record. As the BIA held, the IJ "has broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence." J.A. 4 (BIA decision) (collecting citations). In exercising her duty to manage Gurung's case, the IJ sensibly identified the passport as important evidence to consider. She acted as a responsible judge should, directing the proceedings before her in such a way as to resolve the parties' dispute. Her request for the passport cannot reasonably be construed as advocacy, especially in comparison with cases where we have found this kind of due process violation. *See, e.g.*, *Fiadjoe v. Attorney Gen.*, 411 F.3d 135, 154 (3d Cir. 2005) (criticizing IJ for taking over direct and cross-examination of prospective deportee in an "extraordinarily abusive" tone).

As for the timing of the passport's admission into evidence, Gurung points to no procedural rule the IJ violated by allowing its late admission into the record. Indeed, "[t]he Immigration Judge *may set and extend* time limits for the filing of applications and related documents and responses thereto, if any." 8 C.F.R. § 1003.31(c) (emphasis added). And Gurung had an opportunity to object; she filed written objections contesting the passport's admissibility, which the IJ overruled. Gurung offers no reason why the hearing would have proceeded differently had DHS offered the passport earlier. It was

4

competent evidence tending to prove her citizenship, a highly relevant consideration, as she based her asylum application in part on the allegation that she is stateless. Because the IJ allowed Gurung to object (and Gurung does not challenge the IJ's consideration of or ruling on her objections), she was afforded "'the opportunity to be heard at a meaningful time and in a meaningful manner'" on the subject of the passport, and therefore her due process claim fails. *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).

### B. *Gurung's Nepali Citizenship*

Gurung argues that there is insufficient evidence to support the IJ and BIA's conclusions that she is a citizen of Nepal because her passport is not genuine. The only material in the record in favor of Gurung's position is her own testimony that she fraudulently obtained the document. But Gurung was born in Nepal and lived there for more than 15 years, and it is undisputed that these criteria make her eligible for Nepali citizenship. She was admitted to the United States in reliance on her passport, further supporting the inference that it is genuine. In the end, she did not establish citizenship in a country other than Nepal, and she could not produce a Tibetan Green Book, which would have corroborated her claim that she was a stateless Tibetan refugee. The BIA and IJ were entitled to weigh this countervailing evidence and conclude that Gurung's passport was genuine, and their conclusions are therefore supported by substantial evidence.[1]

---

[1] We note that the basis for Gurung's removal is that she entered the United States without a valid passport. But as Gurung has never pointed out this tension in the IJ's

### C.     *The IJ's Application of* Abdulai

In both asylum and withholding of removal proceedings, "[t]he testimony of the applicant, if credible, *may* be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a), 16(b) (emphasis added).  There are also times when such credible testimony is not sufficient.  In these cases, the BIA requires of the IJ: "(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so," a framework we have endorsed.  *Abdulai*, 239 F.3d at 554 (internal quotation marks omitted).  The IJ specified Gurung's identity and nationality as facts requiring corroboration, and Gurung was unable to produce a Tibetan Green Book.  The BIA erred in affirming the IJ, Gurung argues, because the IJ did not address the third prong of *Abdulai*.

In a section of her opinion headed "*No Green Book,*" the IJ acknowledged that Gurung applied for such a document in 2007, 2008, and 2009, and she noted the argument that Gurung was approved for one but never received it due it bureaucratic delays.  The IJ addressed other evidence that Gurung amassed to support her claimed refugee status, namely letters from the Office of Tibet (the Tibetan government-in-exile's representative in New York) and the Nechung Foundation (a New York nonprofit), and a card from the Tibetan Youth Congress of New York and New Jersey.  The IJ determined

---

reasoning, we do not consider it.  *See Castro v. Attorney Gen. of U.S.*, 671 F.3d 356, 365 (3d Cir. 2012).

that the letters were problems because they both referred to Gurung's Green Book, a document Gurung acknowledges has never been issued, and that the card had limited probative value because Gurung received it after applying for asylum. The IJ thus dismissed all of Gurung's explanations for why she had no Green Book despite being a Tibetan refugee. From her detailed discussion, it is evident that the IJ in substance analyzed whether Gurung adequately explained her failure to produce the Green Book and concluded she had not, even if the decision did not parrot the language of *Abdulai*.

### D. Asylum and Withholding of Removal

A person may receive asylum if she has suffered past persecution or has a reasonable fear of future persecution. 8 C.F.R. § 208.13(b). Past persecution triggers a rebuttable presumption of a well-founded fear of future persecution. *Singh v. Gonzales*, 406 F.3d 191, 195–96 (3d Cir. 2005). To be entitled to mandatory withholding of removal under the INA, a prospective deportee must show by a preponderance of the evidence (a higher standard than asylum requires) that she will be persecuted upon removal. 8 U.S.C. § 1231(b)(3)(A). Similarly, if a person can show that it is more likely than not that she will be tortured if sent to a particular country, the CAT forbids removal to that place. 8 C.F.R. § 208.16(c)(2).

"Persecution," we have held, "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lukwago v. Ashcroft*, 329 F.3d 157, 167-68 (3d Cir. 2003) (internal quotation marks and citations omitted). An instructive case on the border between persecution that requires withholding of removal

7

and unjust treatment that does not is *Jarbough v. Attorney Gen.*, 483 F.3d 184 (3d Cir. 2007). In that case, the first time he was arrested

> officers placed Jarbough in an interrogation room for four hours. They threatened him with wires and electrical cables, screamed at him, and jabbed his shoulder with their fists. The second time, the officers confined Jarbough for two days. They cursed, threatened, kicked, shoved, and pushed him. As a result of this abuse, Jarbough suffered bruising. He did not go to a doctor, however, as his injuries did not require immediate medical intervention.

*Id.* at 191. We held that substantial evidence supported the BIA's determination that Jarbough had not suffered persecution.

Other than conclusory statements and generalized references to "background documents . . . in the record," Pet'r's Br. 32–34, the only evidence Gurung relies on to support her claim that she will be persecuted or tortured is the series of detentions by Nepali police in 2008. Between March and August of that year, she was arrested, detained, interrogated and beaten three times. During the last two detentions, she was threatened with deportation to China. None of the episodes lasted more than two days, and none required medical attention. Authorities never pursued deportation, and Gurung remained in Nepal months after her last arrest without incident.

Although the behavior of the police appears deplorable, we must deny Gurung's petition. Her treatment was no worse than that suffered by Jarbough. Like him, Gurung alleged minor injuries that did not require medical intervention. Her longest detention lasted two days, just as in *Jarbough*. Moreover, although she remained in Nepal for some months after her last arrest, she points to no evidence that she was harassed after August 2008. The IJ characterized the testimony before her—including Gurung's—as "vague

8

. . . about the circumstances of the three arrests and what exactly was happening at that moment." App. 15 (IJ decision). Gurung has come forward with no additional clarity on appeal. By virtue of our precedents, particularly *Jarbough*, and our deferential standard of review, we must hold that substantial evidence supports the BIA's finding that the police in Nepal did not "persecute" Gurung within the meaning of our case law.

Finally, because Gurung does not meaningfully challenge the BIA's finding with respect to future persecution or torture except insofar as the BIA and IJ did not apply a presumption in Gurung's favor based on past persecution, we cannot grant her petition on this ground either.

*　　*　　*　　*　　*

For these reasons, we deny Gurung's petition for review.

9