OPINION *
AMBRO, Circuit Judge.
Mohamed Rafeeldeen petitions for review of a final order of the Board of Immigration Appeals (“BIA”) approving his removal from the United States. We grant Rafeeldeen’s petition in part and remand the case to the BIA[1]
I. Background
Because the decisions of the Immigration Judge and the BIA are silent on the issue of credibility, “we accept [Rafeel-deen’s] recitation of the facts as given in his affidavits and testimony.” Lukwago v. Ashcroft, 329 F.3d 157, 164 (3d Cir.2003). Rafeeldeen, a Tamil-speaking Muslim, was repeatedly detained and beaten by Sri Lankan officials based on his supposed affiliation with a spy for the Liberation Tigers of Tamil Eelam (“LTTE”). Rafeel-deen’s troubles began in 2002, when he was giving a tour to a group that included a Tamil man named Jeevakumar (spelled in parts of the record as Jeeva Kumar). Sri Lankan officials detained the whole group, but they released Rafeeldeen soon afterward. However, authorities shortly thereafter requested that he report to a police station, where they interrogated him about his supposed connection to Jeevaku-mar (about whom Rafeeldeen said he had no knowledge). Sri Lankan officials apparently believed that Jeevakumar, no longer in custody, was a spy for the LTTE, against whom the government was waging a lengthy civil war. They kicked Rafeel-deen, took off his clothes, taped his mouth, and hit him with belts until he fainted. His father secured his release, but Rafeel-deen was told to report for- questioning every week until Jeevakumar was apprehended. Rafeeldeen fled to Dubai, where he remained (with the exception of a one-month trip to Sri Lanka) until 2007.
Upon Rafeeldeen’s return to Sri Lanka in 2007, Sri Lankan officials arrested him and questioned him again about Jeevaku-mar. They broke his Anger while interrogating him, causing him again to faint, and only released him on the condition that he report weekly for questioning. Shortly afterward, he left for the United States on a temporary visa, which he overstayed (giving rise to these proceedings). After he left, Sri Lankan officials twice came looking for Rafeeldeen and, when they could not And him, beat his father. They said they would kill Rafeeldeen if they located him.
II. Past Persecution Based on an Imputed Political Opinion
Rafeeldeen argues that his past treatment by Sri Lankan officials constituted *119 persecution based on an imputed political opinion. He bears the burden on this claim. (Kulvier) Singh v. Gonzales, 406 F.3d 191, 195 (3d Cir.2005). However, he need not prove that the persecution “occurred solely on account” of such an imputation. Id. at 197 (emphasis in original). Rather, under the REAL ID Act, Pub.L, No. 109-13, Div. B, 119 Stat. 231, 302 (2005), showing that an imputation was “at least one central reason” will suffice. Ndayshimiye v. Attorney Gen., 557 F.3d 124, 127 (3d Cir.2009) (internal quotation marks omitted). Under this test, the imputation cannot be “incidental, tangential, or superficial” as a motive. Id. at 130 (internal quotation marks omitted). At the same time, however, a “persecutor may have more than one central motivation for his or her actions; whether one of those central reasons is more or less important than another is irrelevant.” Id. at 129.
The Government argues that the motive for Rafeeldeen’s treatment was a legitimate law enforcement activity (the search for a spy) rather than an imputed political opinion. But the two are not mutually exclusive, and Rafeeldeen does not need to establish that the latter predominated over the former. He merely must show that an imputed political opinion was at least a principal reason for his treatment. And he has done so. Specifically, he testified that Sri Lankan authorities called him a “Tiger supporter.” Certified Administrative Record (“CAR”) 103. He also said they labeled him a “traitor” and “curse[d]” him because he is a Tamil-speaking Muslim who “helped the LTTE.” Id. at 106, 108. Asked if authorities suspected him of “being part of the LTTE, even a spy,” he answered “yes.” Id. at 119. Rafeeldeen testified that these beliefs were inaccurate and that he has never been associated with the LTTE. Id. at 118.
In (Kulvier) Singh, the police also had a legitimate law enforcement motivation, which was the search for illegal weapons. But we held that the statements of certain officers demonstrated that the persecution was “motivated in significant part by the police’s desire to punish [the applicant] and his father for the father’s political activities regardless of any legitimate law enforcement purpose the police may have had in investigating [the applicant’s] father for harboring illegal weapons.” 406 F.3d at 198. On the record before us, the same motivation áppears here.
In addition to the statements authorities made to Rafeeldeen, his re-detention in 2007 is also relevant. Parts of his 2002 detention can be chalked up to legitimate law enforcement motives. He had just encountered an alleged spy, and the government’s questioning of him based on that might not, by itself, be a basis for finding an imputation of a political opinion. But the government re-detained Rafeel-deen in 2007, beat him, never charged him with a crime, and only released him on the condition that he report weekly for questioning. And after he left for the United States, authorities continued to look for him and in their efforts beat his father. This shows that the government did not accept Rafeeldeen’s explanation in 2002 that he was just a tour guide in the wrong place at the wrong time. (If there were evidence that Rafeeldeen was actually involved with the LTTE, this would be a different case.)
Our conclusion is consistent with how other courts and the BIA have treated similar facts involving the LTTE. See, e.g., Ratnam v. INS, 154 F.3d 990, 992, 996 (9th Cir.1998) (applicant arrested while performing forced mission for the LTTE established persecution based on an imputed political opinion where Sri Lankan officials beat and interrogated him under the *120 “mistaken belief that he was a member of the [LTTE]”); In re S-P-, 211. & N. Dec. 486, 495-96 (BIA 1996) (same for applicant found at LTTE base camp where he had been forced to work).[2]
The most analogous case, however, arose outside the LTTE context. In (Ka-malpal) Singh v. Holder, 764 F.3d 1153 (9th Cir.2014), the authorities believed that the applicant (Singh) had employed a domestic servant (Khan) who was a Kashmiri terrorist. Based solely on Singh’s connection to the servant, authorities arrested him, beat him, and labeled him a “ ‘traitor’ ” — the same descriptor applied to Raf-eeldeen — “who was “working against the government.’” Id. at 1157. Like Rafeel-deen, Singh testified that he was not associated with terrorists and that he did not have any information about the suspected terrorist. Id. at 1160. As with Rafeel-deen, there were no adverse credibility findings. Id. at 1161. The Ninth Circuit, applying the REAL ID Act’s centrality test, concluded that the denial of asylum on the basis of an imputed political opinion was not supported by substantial evidence. In particular, the Court reasoned that, “[t]aking Singh’s testimony as true, as we must, Singh was falsely accused of being a terrorist and holding antigovernment views because of his association with Khan.” Id, at 1160. See also id. (noting that Congress, in enacting the REAL ID Act, “explicitly reiterated that an applicant sufficiently shows a nexus to a protected ground when he provides evidence that law enforcement mistakenly believes him to be a terrorist.”).
In (Kamalpal) Singh, as in our case, the authorities’ questioning was single-mindedly focused on, eliciting information about a supposed terrorist. The dissent there, like the dissent here, seized on this and argued that the questioning, while abusive, was merely “taking [the authorities’ view] to its logical extension — that [the applicant] would have useful information about that terrorist.” Id. at 1167 (George, J., dissenting in part and concurring in part). The majority rejected this argument. Id. at 1162 n. 7 (“To the extent that the dissent makes the extraordinary claim that the police could not have imputed a political opinion to Singh because they interrogated him for information about Khan, such a claim is flatly at odds with our precedent.”).
We agree with the Ninth Circuit’s analysis in (Kamalpal) Singh. Contrary to our dissenting colleague’s view, it is not what the Sri Lankan authorities asked Rafeel-deen about (Jeevakumar), but why they were asking the questions (because they mistakenly believed Rafeeldeen was an LTTE supporter) that determines our outcome. As evidenced by statements made to Rafeeldeen during questioning and by the very fact of his re-detention in 2007, Sri Lankan authorities did not accept as true that which we, as a result of the lack of adverse credibility findings, must: that Rafeeldeen had no connection to the LTTE. The authorities’ contrary belief, even if formed in the context of a law enforcement investigation, is the basis for an imputation. Although our dissenting colleague is correct that our review is deferential, we conclude — as we did in (Kulvier) Singh and the Ninth Circuit did in (Kamalpal) Singh — that substantial evidence does not support the determination that Rafeeldeen failed to establish this imputation.
*121 III. The Government Has Not Carried Its Burden
Because Rafeeldeen has met his burden to show past persecution based on an imputed political opinion, he has triggered a “rebuttable presumption” of eligibility for asylum based on a well-founded fear of future persecution. (Kulvier). Singh, 406 F.3d at 195-96 (internal quotation marks omitted). It is the Government’s burden to rebut the presumption by a preponderance of the evidence. Toure v. Attorney Gen., 443 F.3d 310, 317 (3d Cir.2006).
The Government tried to meet its burden in three ways. First, it relied heavily on the fact that the civil war in Sri Lanka ended with the defeat of the LTTE in 2009. However, as a State Department report in the administrative record demonstrates, conditions are still dangerous despite the end of that war. See CAR 132 (noting that among the “major human rights problems” in Sri Lanka are attacks against persons viewed as LTTE “sympathizers” and that there is “widespread impunity” for “police torture”). The end of the civil war might be enough if the burden were on Rafeeldeen. But it is not enough for the Government to carry its burden.
Next, the Government notes that Sri Lankan officials have not looked for Raf-eeldeen since 2007 and argues that this is an indication that they are no longer interested in him. This ignores Rafeeldeen’s allegation that government officials re-detained him in 2007 when he returned from Dubai. That is five years after officials initially detained him in 2002. There is no indication that government officials were persistently looking for him while he was in Dubai, but his return to Sri Lanka, even after several years, reignited their interest. It is plausible that the same thing could happen again. Finally, our Government notes that we do not know what happened to Jeevakumar or whether the authorities are still looking for him. In light of Rafeeldeen’s claim that he knows nothing about Jeevakumar, it would be incongruous to require Rafeeldeen to produce that evidence when the burden is on the Government.
^
In this context, we grant Rafeeldeen’s petition in part and remand the case to the BIA for further proceedings consistent with this opinion. See Fei Mei Cheng v. Attorney Gen., 623 F.3d 175, 197 (3d Cir.2010) (noting that remand rather than reversal is appropriate because the “ultimate decision concerning ... eligibility for asylum is the agency’s, not ours, to make”).[3]

 This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

. Because the Immigration Judge and the BIA both provided reasoned decisions, we review both of them. Hashmi v. Attorney Gen., 531 F.3d 256, 259 (3d Cir.2008). Our review is to determine whether substantial evidence supports their outcome. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir.2003) (en banc).

. Although (Kulvier) Singh, Ratnam, and In re S-P- came out prior to the current requirement, stemming from the REAL ID Act, that a protected ground be at "at least one central reason” for persecution, we have no reason to believe that their outcomes would be different under the current standard.

. Rafeeldeen also requests 1) asylum on the theory of persecution for membership in a social group; 2) withholding of removal; and 3) relief under the Convention Against Torture ("CAT”). We have reviewed these claims and determined that they are unpersuasive. First, Rafeeldeen claims that his encounter with Jeevakumar created a social group consisting of the two of them. This fails under our case law, which typically requires that a social group be comprised of people who possess "immutable characteristics” or those who "possess a characteristic that is capable of being changed but is of such fundamental importance that.individuals should not be required to modify it, e.g., religion.” Escobar v. Gonzales, 417 F.3d 363, 367 (3d Cir.2005). Second, Rafeeldeen does not qualify for withholding of removal because he has not demonstrated a "clear probability” that he will face persecution if returned to Sri Lanka. INS v. Stevic, 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (internal quotation marks omitted). Third, Rafeeldeen is ineligible for CAT relief because he has failed to carry his burden to show that it is "more likely than not" he would be tortured if returned to Sri Lanka. Kamara v. Attorney Gen., 420 F.3d 202, 212 (3d Cir.2005) (internal quotation marks omitted). Finally, we reject Rafeeldeen’s contention that the Immigration Judge was not a neutral arbiter, as the record does not support the claim. As a *122 result, we deny the petition for review with respect to all claims other than the one for asylum based on an imputed political opinion.