

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2008

# Musaylyan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4273

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Musaylyan v. Atty Gen USA" (2008). *2008 Decisions.* Paper 617.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/617

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-4273
_____

ARMEN SAMSONOVICH MUSAYLYAN,
Petitioner
vs.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
Agency No. A98 415 541 on August 31, 2006
Immigration Judge: Henry Dogin

_____

Submitted Under Third Circuit LAR 34.1(a)
September 5, 2007
Before:    FISHER, ALDISERT AND WEIS,  Circuit Judges

Filed: August 28, 2008
_____

OPINION

_____

PER CURIAM.

        Armen Samsonovich Musaylyan petitions for review of an order of the

Board of Immigration Appeals (BIA), dismissing his appeal from an order by an

Immigration Judge (IJ), which ordered his removal to Uzbekistan and denied his

application for asylum and related relief.[1]  We will deny the petition for review.

## I.

Musaylyan is a native of the former Soviet Union[2] and a citizen of Uzbekistan.  He is ethnically Armenian and is a member of the Armenian Christian religion.  He entered the United States on a visitor's visa in 2003 and made an affirmative application for asylum before the visa expired.  An IJ denied relief on May 20, 2005, and the BIA affirmed the denial on August 31, 2006.  Musaylyan filed a timely petition for review.

Musaylyan based his asylum claim on his alleged persecution on account of his ethnicity and religion.[3]  Musaylyan testified that in 1991, while on tour in Moscow as a member of the Uzbek State Philharmonic, he was required to play his instruments behind a curtain because the orchestra officials felt it was inappropriate for an Armenian to be a member of the orchestra.  A.R. 135-36.  He also testified that his daughter, who

---

[1]  As Musaylyan makes no argument in his brief regarding the decision to deny him statutory withholding of removal and protection under the Convention Against Torture, we do not address these issues.  Konan v. Attorney General, 432 F.3d 497, 500 n.2 (3d Cir. 2005).

[2]  He was born in the area which is now Azerbaijan.  A.R. 125.

[3]  Musaylyan's brief states that his asylum claim is based on persecution due to his membership in a particular social group, i.e., ethnic Armenian males living in Uzbekistan.  The Administrative Record does not reflect that Musaylyan argued before the IJ or the BIA that he was a member of a particular social group.  Rather, he based his claims on his ethnicity and religion.  In a case such as this, the concepts of ethnicity, religion and particular social group may overlap.  As his appellate brief in essence argues that he was persecuted on the ground of his ethnicity and religion, we will continue to use that terminology in discussing his claims.

2

got good grades, was not accepted to the Economic Institute because she was Armenian, and that kids spit on his children when they were in school. A.R. 141.

Musaylyan also testified concerning two incidents involving the police. The first occurred in the summer of 1997 at the marketplace. Musaylyan was arguing with a vegetable seller, believing that the seller raised the price simply because Musaylyan was not an Uzbek. The sellers began pinching him and passersby joined in and began beating him. The police came. Rather than helping Musaylyan, they took him to the police station, emptied his pockets, and took his wallet. After about 40 minutes, they let him go. A.R. 45-47. The second incident occurred in 2003, when police came and rounded up people in the marketplace under the premise of fighting terrorism. Musaylyan was taken along with seven Koreans. The police took him to the precinct and beat him for a long time, fracturing his fingers, his toes and his hip. A.R. 148-52. They kept asking him for money and also were cursing, saying things like "stinking Armenian swine." A.R. 152. Musaylyan needed medical help, but was afraid to ask for help, because the police threatened to kill his family if he complained. Id. He tried to heal himself through Hatha yoga, and also saw an acupuncturist friend for help. A.R. 153.

Musaylyan also presented the testimony of an expert witness, Igor Abraham Kotler, who the IJ accepted as an expert regarding the treatment of minorities in the former Soviet Union. A.R. 79-80. Kotler testified that the number of Armenians living in

3

Uzbekistan has drastically dropped since Uzbekistan became independent.[4] He also

testified that Armenians are readily identifiable by appearance and that official documents

would also reflect Armenian ethnicity. A.R. 179-80. He testified that it would be

difficult for any Armenian to relocate because one must obtain permission to relocate.

A.R. 182. Kotler testified that most Armenians would be discriminated against in

Uzbekistan, and that there were many cases of persecution. He acknowledged that he

could not say that all Armenians are persecuted, because each case must be considered

individually. A.R. 185.

## II.

Where the BIA issues a decision on the merits, we review the BIA's order,

and not the IJ's. Lie v. Ashcroft, 396 F.3d 530, 534 n.3 (3d Cir. 2005). Because this

Court reviews the decision of the BIA, unless the BIA adopts the IJ's finding concerning

credibility or makes its own credibility finding, this Court must proceed as if the alien

were credible, and must review whether the BIA's decision was supported by substantial

evidence, assuming that credibility. Kayembe v. Ashcroft, 334 F. 3d 231, 234-35 (3d Cir.

2003).

Here, the BIA noted that the IJ had not expressly made a credibility finding,

_____

[4] Kotler was testifying telephonically, and the hearing transcript shows the notation "indiscernible" in several places. The transcript reflects that Kotler said something about 60,000 Armenians living in Uzbekistan at some point. A.R. 178. The IJ's decision states that Kotler testified that there were 36,000 Armenians in the area that is now Uzbekistan in 1989. A.R. 80. In any event, it is clear that Kotler testified that there are now only about 8,000 to 10,000 Armenians living in Uzbekistan. A.R. 80, 178.

4

and thus assumed that Musaylyan was credible. The BIA found that Musaylyan failed to establish past persecution based on two reasons: first, it found that incidents Musaylyan described constituted discrimination rather than persecution; second, it affirmed the IJ's conclusion that Musaylyan failed to establish a nexus between the harm he reported "and an actual or imputed protected ground." A.R. 3.[5] We will discuss each basis in turn.

In noting that not all unfair treatment constitutes persecution, the BIA cited Musaylyan's testimony regarding his treatment by the Uzbek Philharmonic and the fact that his daughter was not admitted to the Uzbekistan Institute of Economics. We agree that these incidents to not rise to the level of persecution. See Fatin v. INS, 12 F.3d 1233, 1240 n. 10 (3d Cir.1993) (holding that persecution denotes "extreme conduct").

Musaylyan accurately notes that the BIA did not directly address Musaylyan's incidents with the police when discussing whether he experienced discrimination rather than persecution. However, we read the BIA's decision as holding that even if these incidents could constitute persecution, Musaylyan failed to establish that there was a nexus between the harm he suffered and his ethnicity or religion.

We review the BIA's finding of a lack of connection between Musaylyan's ethnicity and his mistreatment by the Uzbeki police for substantial evidence. Gjolaj v.

---

[5] The BIA also denied Musaylyan's "Motion to Admit Evidence on Appeal," which it construed as a motion to remand, and denied withholding of removal and protection under the Convention Against Torture. As Musaylyan does not contest these portions of the decision, we do not discuss them. See supra, n.1.

<u>Bureau of Citizenship and Immigration Services</u>, 468 F.3d 140, 143 (2d Cir. 2006). The BIA properly noted that an alien need only show that his persecutors were motivated, at least in part, by a protected ground. <u>Singh v. Gonzales</u>, 406 F.3d 191, 197 (3d Cir. 2005). However, the BIA found that Musaylyan's testimony supported a finding that his mistreatment by police was motivated largely by money. The BIA quoted Musaylyan as stating that in the second incident the police "as usual, . . . were looking to get money." A.R. 4, 35-39. The BIA found further support for this finding in the 2004 Country Report on Human Rights Practices, which reported that "[p]olice routinely and arbitrarily detained citizens to extort bribes." A.R. 4, 278.

Musaylyan notes that the BIA quoted only a portion of his comment about the second incident; in addition to saying that the police were looking for money, he added "They also–they also were cursing, saying like stinking Armenian swine." A.R. 152. We find that this single reference to Musaylyan's ethnicity does not establish that he was beaten because of his ethnicity. <u>Cf</u>. <u>Lie</u>, 396 F.3d at 533-34 (robber's statement, "you Chinese pig, I want your money" insufficient to establish nexus between ethnicity and persecution).

Musaylyan also argues that he established a well-founded fear of future persecution. The BIA properly noted that the fact that members of Musaylyan's family remained in Uzbekistan without harm diminished his claim of possible future persecution. <u>Lie</u>, 396 F.3d at 537. Musaylyan also argued that he established a fear of future persecution because he showed that there is a pattern or practice of persecuting

6

Armenians in Uzbekistan.  Musaylyan failed to raise his pattern or practice claim before the BIA and has thus failed to exhaust administrative remedies as to this claim.  We are therefore precluded from reviewing the claim.  8 U.S.C. § 1252(d)(1); <u>Abdulrahman v. Ashcroft</u>, 330 F.3d 587, 594-95 (3d Cir. 2003).

For the foregoing reasons, we will deny the petition for review.