IMG-031                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1911
_____

JINESH JASHBHAI PATEL;
SHILPA BEN JINESH KUMAR PATEL;
POOJA JINESH KUMAR PATEL,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition For Review of an Order
of the Board of Immigration Appeals
(Agency Nos. A079-326-664, A079-326-665, A079-326-666)
Immigration Judge: Alberto J. Riefkohl
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2013

Before: RENDELL, ALDISERT and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 11, 2013 )
_____

OPINION OF THE COURT
_____

PER CURIAM

Jinesh Jashbhai Patel, his wife Shilpa Ben Jinesh Patel and daughter Pooja Jinesh

Kumar Patel, petition for review of the Board of Immigration Appeals' final order of

removal.  For the reasons that follow, we will deny the petition for review.

The Patels are citizens of Kenya but they are natives of India and Hindus. They were admitted to the United States in November, 2000 as non-immigrant visitors and overstayed. On June 21, 2001, Jinesh Patel filed an application for asylum, claiming that he feared that he and his family would be harmed in Kenya because of their nationality and religion. On July 30, 2001, the former Immigration & Naturalization Service served the family with Notices to Appear, which charged that they are removable pursuant to 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for a time longer than permitted.[1] On August 30, 2001, the Patels appeared in Immigration Court and conceded that they are removable as charged. Later when their attorney failed to appear, they were ordered removed, but they were successful in getting their case reopened. Thereafter, their separate applications for asylum, withholding of removal, and protection under the Convention Against Torture were considered on the merits.

In support of the family's claims, Jinesh Patel testified that he and his wife lived happily and prosperously in Kenya for many years. He owned two printing businesses and a photo processing lab in the cities of Mombasa and Malindi. Things changed during the 1997 Kenyan parliamentary elections, when he was printing for everyone who was standing for election, including an opponent of the incumbent Minister of Parliament, Sharif Nasir from the KANU political party. Patel testified that Nasir came to his store, complained that he (Patel) was supporting the opposition, and threatened to kill him. Nasir declared that Patel was not supposed to be in Kenya. In May, 1998, Patel became

---

[1] The Patels have a second daughter who is a United States citizen and is not in removal proceedings.

aware of a growing hostility by native Kenyans toward the more prosperous Indian community. He learned that someone was shot dead in his shop. In April, 1999, he was extorted by two individuals posing as police officers. To avoid being arrested and falsely charged with receiving stolen property, Patel, with the help of a friend, negotiated a payment of 40,000 shillings; the extortionists took the money and left. On May 30, 1999, five strangers came to his photo shop and one of them put a gun to his head. These individuals kicked Patel in the stomach, insulted him with racial slurs, threatened to hurt him if he went to the police, and robbed the store of cash and cameras, allowing only an ethnic African customer to keep his expensive camera.

After this robbery, Patel called the police, who came to the shop but would not dust for fingerprints, stating that it would not help. Immediately after reporting this robbery, Patel and his wife began receiving numerous daily anonymous telephone calls, in which the caller threatened to kill them and kidnap their daughter. Patel went to the police station where he was told to stop worrying. There was no progress regarding the May, 1999 robbery and Patel began to doubt that the police were going to help him. The calls continued, and, in July, 1999, Shilpa, who was then six months pregnant, was attacked on the street and thrown to the ground, a knife was put to her throat, and her attackers began to tear her clothes. She screamed for help, and, although native Kenyan bystanders would not come to her aid, her attackers eventually fled after stealing her necklace. Patel and Shilpa reported the attack to the police but they would not send an officer because they did not have an available police car.

3

On September, 4, 1999, Patel was working late at night in his photo processing shop when two police officers came in and harassed him until he gave them the money in his cash register. Patel chose not to report the incident to the police because he did not believe they would help. On September 7, 1999, Patel discovered that the locks on the photo shop had been cut off and the store had been completely cleaned out. The security guard Patel had hired to watch the shop was gone, along with most all of the equipment. Patel called the police, who examined the scene and made a report but again declined to dust for fingerprints. Thereafter, the family continued to receive threatening telephone calls. Patel was aware that some Kenyan politicians were fanning ethnic animosity. He spent the next year winding up his business affairs and then departed Kenya for the United States.

Shilpa Patel also testified, and she corroborated the attempted rape incident. The Patels submitted background evidence concerning the past and current relationship between the ethnic Indian business community and native Kenyans, including newspaper articles reporting on crimes against business owners. They also submitted police reports dated May 30, 1999 and October 7, 1999, an insurance claim dated September 16, 1999, and affidavits from family and friends.

On January 10, 2011, the Immigration Judge issued a written decision, denying the Patels' applications. The IJ found that the Patels were credible (although he noted several inconsistencies in their case), and that they had provided corroboration for their claim, but concluded that they had failed to meet their burden of proof because the harm they suffered in Kenya was not so severe as to constitute persecution. The IJ determined

4

that the telephone threats and the one in-person threat by Nasir were neither highly imminent nor particularly menacing, citing Li v. Att'y Gen. of the U.S., 400 F.3d 157, 164 (3d Cir. 2005), and the Patels had failed to show that any of the subsequent incidents were linked to Nasir and his imputed political opinion threat. The IJ determined that the incidents of robbery, harassment, extortion, and burglary also did not amount to persecution, citing Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993). The Patels received only minor injuries, and crimes directed at the wealthy and indicative of general lawlessness and violence do not establish a claim for asylum under the Immigration & Nationality Act, see Lie v. Ashcroft, 396 F.3d 530, 533 (3d Cir. 2005). The Patels failed to show that the burglary, thefts, and robbery were motivated, even in part, by their ethnicity, religion, or political opinion, imputed or otherwise; instead, the evidence showed resentment toward the Patels because of their wealth. Moreover, the Kenyan police, although inept, responded or at least tried to respond to the Patels' calls for assistance. Accordingly, the Patels did not show past persecution.

The Immigration Judge also concluded that the Patels did not demonstrate a well-founded fear of future persecution because the objective evidence did not establish that they would be singled out for persecution by the Kenyan government on account of a protected ground. Noting the Patels' background evidence regarding the 2007 election-related violence, the IJ concluded that the Patels did not prove that their alleged persecutors from 10 years ago would still have any interest in them. Moreover, the election violence ended in 2008 when the two sides agreed to form a coalition government. Referring to the 2009 State Department Country Report, the IJ further

5

concluded that the evidence did not support a finding that there existed a pattern or practice of persecution of Kenya's prosperous minority ethnic Indian population. The IJ denied the Patels' claim for withholding of removal, and further concluded that they had not shown that it is more likely than not that they would be tortured by or with the consent of the Kenyan government. The IJ ordered the Patels removed to Kenya, with an alternative order of removal to India.

The Patels appealed to the Board of Immigration Appeals, arguing that the IJ did not give sufficient weight to their testimony and evidence, the IJ erred in concluding that their pattern or practice claim lacked merit, the IJ exceeded his authority in violation of their right to due process, and the IJ engaged in improper speculation.

On March 6, 2012, the Board affirmed the IJ's decision and dismissed the appeal, concluding that the IJ correctly found that the Patels did not prove harm amounting to past persecution or a well-founded fear of future persecution. The Board concluded that the IJ did not violate the Patels' due process rights because he did not base his decision on personal opinion or speculation, and the IJ did not fail to give sufficient weight to the Patels' evidence. The Board noted its agreement with the IJ that the Patels suffered no serious harm amounting to persecution; that the threats they received were not so imminent as to constitute persecution; and that they did not present sufficient evidence to demonstrate that any harm they suffered was on account of their race, social group, or religion. Although the evidence showed that violent crime by native Kenyans, including robbery, kidnapping, extortion, and murder, was common in Kenya, and that the victims were frequently Indian, it did not show that the criminals were motivated by anything

6

other than money, and for this reason the Patels did not show a well-founded fear of persecution based on a protected ground. The 2009 Country Report showed a high level of crime and violence in Kenya, but the generalized lawlessness was not a pattern or practice of persecution related to any protected category, and, in any event, the evidence indicated that the Kenyan government does not ignore ethnic violence, and was attempting to fight the crime, even if its efforts have not been effective. The Board affirmed the IJ's statutory withholding of removal and CAT conclusions.

The Patels have petitioned for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). The Patels have argued in their opening brief that the agency erred in concluding that they did not meet their burden of proof, and the agency violated procedural due process when it ignored evidence which had not been fully developed because the IJ adjourned the initially scheduled hearing at which witnesses from far away were present to testify.

We will deny the petition for review. We consider both the Board's and the IJ's decisions where the Board substantially relies on the IJ's decision, as it did here. Kaita v Att'y Gen of the U.S., 522 F.3d 288, 296 (3d Cir. 2008). The agency's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See id. at 481 n.1; Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

7

The Immigration & Nationality Act gives the Attorney General discretion to grant asylum to any person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant has the burden of proof. 8 C.F.R. § 1208.13(a). An asylum applicant must show either that he has been subject to past persecution or has a well-founded fear of future persecution, and the persecution must be on account of one of the five statutory bases. 8 C.F.R. § 1208.13(b). It is presumed that an applicant who establishes that he suffered past persecution has a well-founded fear of persecution, see id. at § 1208.13(b)(1), but if the applicant cannot show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in his circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

The record in the Patels' case does not compel the conclusion that they suffered persecution in Kenya prior to coming to the United States. Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin, 12 F.3d at 1240). It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id. As the agency determined, the Patels were victims of crime; their businesses were robbed and burglarized and Mrs. Patel was violently assaulted

8

when she was six months pregnant.  The Patels did not claim that they were seriously physically injured, and, although they were upset and suffered financial losses, the upset and economic loss resulting from these events was not so extreme that it constituted persecution.  See Konan v. Att'y Gen. of the U.S., 432 F.3d 497, 506 (3d Cir. 2005) (mere generalized violence and lawlessness are not sufficient basis for grant of asylum).  Similarly, the threats and harassment the Patels experienced were insufficient to establish persecution.  See Li, 400 F.3d at 164 ("[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution.")  The telephone threats and the threat by Nasir were not highly imminent.  Moreover, although Nasir's threat may have imputed a political opinion to Mr. Patel, there was a complete failure to show that any of the subsequent incidents were linked to Nasir and his threat.  8 C.F.R. § 1208.13(b) (persecution must be on account of one of the five statutory bases); Singh v. Gonzales, 406 F.3d 191, 197 (3d Cir. 2005) (applicant must show that persecution was caused at least in part by one of protected characteristics).  The Patels' argument linking the incidents together and attempting to show that they signified something other than a string of opportunistic crimes, see Petitioner's Brief, at 10, is speculative at best.

For similar reasons, the record does not compel the conclusion that the Patels have a well-founded fear of persecution.  To establish a well-founded fear of persecution, the Patels had to prove either that they will be individually targeted for persecution in Kenya, or prove that there is a pattern or practice of persecution in Kenya of the minority population of Indian Hindus.  8 C.F.R. § 1208.13(b)(2)(iii), (iii)(A).  The record does not compel the conclusion that the Patels will be individually targeted for persecution in

9

Kenya in the future. The telephone threats and criminal acts occurred more than 10 years ago and the Patels pointed to no specific person who would now be interested in harming them. The election-related violence in 2007, which has long since abated, does not objectively prove that the Patels will be singled out for future harm because they are ethnic Indian Hindus. In short, substantial evidence supports the agency's determination that the Patels' evidence was insufficient with respect to motivation based on ethnicity and religion. see Lie, 396 F.3d at 535. The evidence showed only that robberies and thefts directed at the prosperous Indian community are opportunistic and motivated by a desire for money.

In addition, the 2009 Country Report does not, as the agency concluded, support a conclusion that there exists a pattern or practice of persecution of Kenya's ethnic Indian Hindus. The Country Reports show that crime is rampant in Kenya and that the police are ineffective and possibly also corrupt, but the evidence presented by the Patels is not meaningfully different from that presented in Lie, which concerned attacks by native Muslim Indonesians against the more prosperous Chinese Christian community. There we held that the attacks were perpetrated by individuals and were not the result of government action or acquiescence, and thus the pattern or practice argument failed. 396 F.3d at 537-38. The same reasoning applies to the Patels' pattern or practice claim. Violence or other harm perpetrated by civilians against the applicant's group does not constitute persecution unless such acts are "committed by the government or forces the government is either unable or unwilling to control." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003) (internal quotation marks removed). Substantial evidence

10

supports the agency's determination in the Patels' case that the Kenyan government does not ignore crime directed at prosperous Indian businesses.

Because the Patels failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, they are necessarily ineligible for withholding of removal. See Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). In addition, the agency held that the Patels did not meet their burden of establishing that it is more likely than not that they will be tortured in Kenya, 8 C.F.R. §§ 1208.16, 1208.18, and the record does not compel a different conclusion.

Last, we lack jurisdiction to consider the Patels' procedural due process claim. An asylum applicant must exhaust all administrative remedies available as a prerequisite to raising a claim before this Court. 8 U.S.C. § 1252(d)(1); Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005). Failure to present an issue to the agency constitutes a failure to exhaust. See Lin v. Att'y Gen. of U.S., 543 F.3d 114, 119-20 (3d Cir. 2008). We have carefully reviewed the Patels' brief on appeal to the Board, as well as their notice of appeal to the Board, see generally Petitioner's Reply Brief, at 6, but we disagree with their argument that as a matter of fact they raised a claim before the Board that their procedural due process rights were violated when the IJ adjourned a scheduled hearing and certain witnesses were not allowed to give testimony. Moreover, the claim is correctable through the administrative process, and thus fully subject to the exhaustion requirement. See Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005).

For the foregoing reasons, we will deny the petition for review.

11