NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2252
_____

KELLY JOHANNA BARRERO,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of the Decision of the
United States Department of Justice
Board of Immigration Appeals
(A205-000-858)
Immigration Judge: Shifra Rubin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 25, 2019

Before: SMITH, *Chief Judge*, and CHAGARES and BIBAS, *Circuit Judges*

(Filed: April 11, 2019 )
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

BIBAS, *Circuit Judge*.

Kelly Johanna Barrero advances several arguments for why she should be allowed to remain in the United States. But none of them works. She has not shown that she was persecuted because of a political opinion. Nor has she established that she is a member of a cognizable social group. So we will deny her petition for review.

## I. BACKGROUND

Barrero was born in Colombia in 1987. When she was thirteen, she got roped into attending a recruiting event for the Revolutionary Armed Forces of Colombia (FARC), a rebel group. After showing her a recruitment video, two FARC members asked Barrero if she agreed with the group's tactics and if she would join them. If she did, they said FARC would help improve her community. If she did not, they said they would kill her. She refused their offer and left the meeting.

But FARC was persistent. Twice more, the same two members asked Barrero to join FARC and threatened to kill her and her family if she refused. Twice more, she refused. After the third incident, she went to live with her grandmother in a different city for a few months.

In 2001, Barrero traveled to the United States and entered on someone else's visa. Over the next decade, she finished high school and had two children. The father of the second child was Juan Castillo-Restrepo. He mistreated Barrero. He disappeared for days on drug binges, prevented her from contacting friends and family, and called her degrading names. So in 2008, she left him and went to Canada. He was later arrested for drug crimes and deported to Colombia.

Barrero eventually returned to the United States, was caught, and was charged with removability. She now seeks asylum, withholding of removal, and relief under the Convention Against Torture. She advances three theories. First, she says that members of FARC think she refused to join them because she harbors an anti-FARC political opinion. Second, she claims that FARC targeted her because she was a child who resisted their recruitment. Third, she worries that Castillo-Restrepo will take away their daughter and harm her if she returns to Colombia.

To qualify for asylum or withholding, Barrero must show persecution based on "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A). The immigration judge found that she could not and denied relief. The Board of Immigration Appeals affirmed.

Our review of the Board's decision is deferential. We review its findings of fact for substantial evidence and overturn them only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *accord Lin v. Att'y Gen.*, 543 F.3d 114, 119 (3d Cir. 2008). We too will reject Barrero's claims to asylum and withholding. And Barrero does not challenge the denial of her Convention Against Torture claim, so she has forfeited it.

## II. BARRERO HAS NOT SHOWN THAT FARC TARGETED HER BECAUSE OF HER POLITICAL VIEWS

Barrero rebuffed FARC's attempts to recruit her three times. She says the group thinks she refused to join them because of an anti-FARC political view. But FARC could have

understood Barrero's motivations to be non-political. And even if members of FARC believed she held an anti-FARC political opinion, Barrero has presented no evidence that they persecuted her *because of* that opinion. So she cannot use this path to asylum and withholding.

**A. Barrero has not shown an imputed political opinion**

A person can be persecuted for a political opinion that she does not express or even hold. For purposes of seeking asylum, it is sufficient that her persecutors *think* she has such views and persecute her on that basis. *Singh v. Gonzales*, 406 F.3d 191, 196-97 (3d Cir. 2005). That is what Barrero claims happened here: members of FARC threatened her because they saw her refusal to join as tantamount to an anti-FARC political opinion.

But being threatened after refusing "a guerrilla organization's attempt to conscript" is not always persecution because of a political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). People refuse to join such organizations "for a variety of reasons—fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." *Id.* at 482. So resisting recruitment cannot, without more, support a claim to asylum or withholding.

The same is true here. The Board found that Barrero had not proven that members of FARC thought that she held an anti-FARC political opinion. We agree. After all, Barrero was a teenager when these incidents occurred. And she admits that FARC trafficked drugs and used violence. So her refusal could have been for many non-political reasons: fear, a desire to stay in school, and a desire to remain with her family, among others.

4

Barrero likens her case to *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101 (3d Cir. 2010). There, we found that FARC had imputed a political opinion to Espinosa-Cortez. *Id.* at 110. But differences abound between that case and this one: Espinosa-Cortez socialized with high-ranking Colombian officials. Barrero did not. Espinosa-Cortez had a "close, direct affiliation with, and support of, the Colombian government and military." *Id.* Barrero did not. Espinosa-Cortez came to FARC's attention because of these relationships. *Id.* at 111. Barrero did not. And Espinosa-Cortez "made his living by supporting the Colombian government [and] military." *Id.* at 110. Barrero did not. So many of the facts that supported our holding in *Espinosa-Cortez* are absent here.

True enough, there are two factual similarities. But neither compels a contrary result. First, like Espinosa-Cortez, FARC repeatedly approached Barrero. *See id.* at 112. But this was just one fact among many and was not dispositive. Second, Espinosa-Cortez told FARC that he refused to cooperate because of his "principles." *Id.* at 113. Barrero also once told FARC that she disagreed with some of their tactics. At the recruitment event she attended, FARC showed her a video with "children with the uniforms, armament weapons, [and] drugs." AR 70. The FARC members then asked Barrero if she "was in agreement with that type of help for the community." AR 70-71. She "told them no." AR 71. Barrero argues that by doing so, she conveyed that "she did not agree with what they stood for." Reply Br. 2.

But substantial evidence supports the Board's conclusion that FARC did not construe Barrero's refusal to join as a political statement. In the same colloquy, Barrero attributed her refusal to a non-political reason: she says she did not want to join FARC "[b]ecause

5

they threatened [her]." AR 71. And she repeatedly rejected FARC's offers to join without giving any explanation, political or non-political. *See* AR 72 ("I told them that no, I was not going to become part of them and I left."); AR 78 ("I told them that no."); AR 83 ("I told them that I didn't want to [join], that was not what I wanted."). Barrero also helped her community by distributing food and medical supplies to less-fortunate residents. FARC knew about her community work. And she told a FARC member that she "was not interested in joining and was only going to work in [her] local community." AR 159. So Barrero's statement could also relate to her community efforts and not FARC's political goals. In short, substantial evidence supports the Board's finding that FARC did not impute a political view to Barrero.

## B.  FARC did not target Barrero because of a political opinion

But assume that FARC *did* believe that Barrero refused to join for political reasons. Her claims to asylum and withholding would still fail, because she has not shown that FARC persecuted her "*because of* that political opinion, rather than because of [her] refusal to fight with them." *Elias-Zacarias*, 502 U.S. at 483; *accord Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 609 (3d Cir. 2011).

To the contrary, FARC repeatedly warned Barrero that she would face consequences because she refused to join the group, not because of her political opinions. They said "if [Barrero] did not become part of them, they were going to kill [her]." AR 71. They told her that she "had to be careful because [she] was going to see the consequences for refusing [to join]." AR 85. And they said "if [she] did not become part of the group, they were going to kill [her], [her] mother and [her] family." AR 121. These threats, while disturbing, are

6

not premised on her holding an anti-FARC political view. They suggest instead that FARC targeted her because she refused to join their organization. FARC's efforts to fill its ranks through forcible recruitment is not persecution based on political opinion. So the Board's finding that Barrero was not persecuted because of a political belief is also supported by substantial evidence.

## II. BOTH OF BARRERO'S SOCIAL-GROUP CLAIMS FAIL

Barrero also argues that the Board erred by failing to grant relief based on her membership in two particular social groups. 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A). Both claims fail.

First, Barrero says she belongs to a group of Colombian youth who resisted recruitment by FARC and whom FARC persecuted. The immigration judge found that this group was not cognizable, and the Board adopted this reasoning. We agree. As we have recognized, such claims are circular. A particular social group "must exist independently of the persecution suffered by the applicant for asylum … [It] must have existed before the persecution began." *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003). Otherwise, any asylum seeker who shows persecution could thereby show membership in a particular social group of those who are persecuted. That is not the law. Such a showing cannot support Barrero's claim to asylum or withholding.

Second, she claims she belongs to a group of Colombian women in relationships that they cannot leave. Though she testified about her difficult relationship with Castillo-Restrepo, she never proposed this social group before the agency. So she did not exhaust this claim. *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) (alien must exhaust each

7

issue raised). We cannot review unexhausted claims. 8 U.S.C. § 1252(d)(1). Grasping at a final straw, Barrero claims that the immigration judge should have inferred this social group on her behalf. But that sort of exception to exhaustion is not supported by our caselaw and would swallow the rule.

* * * * *

Barrero has not shown that she was persecuted because of a political opinion or membership in a protected class. Nor has she shown that she faces persecution if she returns to Colombia. So we will deny her petition for review.

8